ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Scott K. Dauscher          State Bar No. 204105
   SDauscher@aalrr.com
Brian M. Wheeler          State Bar No. 266661
   BWheeler@aalrr.com
Amber S. Healy          State Bar No. 232730
   AHealy@aalrr.com
Shawn M. Ogle          State Bar No. 266259
   SOgle@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone:  (562) 653-3200
Fax:  (562) 653-3333

Attorneys for Defendant and Counter-Claimant PAUL CROGHAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SNAP! MOBILE, INC., a Delaware corporation,<br><br>         Plaintiff,<br><br>v.<br><br>PAUL CROGHAN, an individual,<br><br>         Defendant. | Case No.     5:18-cv-04686-LHK<br><br>**FIRST AMENDED ANSWER TO COMPLAINT OF SNAP! MOBILE, INC.; COUNTERCLAIM OF PAUL CROGHAN; DEMAND FOR JURY TRIAL**<br><br>Judge:     Hon. Lucy H. Koh<br><br>Complaint Filed:  August 3, 2018<br>Trial Date:     None Set |
| PAUL CROGHAN, an individual,<br><br>         Counter-Claimant,<br><br>v.<br><br>SNAP! MOBILE, INC., a Delaware corporation,<br><br>         Counter-Defendant. | |

016297.00010
21646403.1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## ANSWER

Defendant and Counter-Claimant Paul Croghan ("Croghan") hereby answers Plaintiff and Counter-Defendant Snap! Mobile, Inc.'s ("Snap") unverified Complaint (the "Complaint") as follows:

### I. Nature of This Action

The first unnumbered paragraph of the Complaint—"Nature of This Action"—does not require an answer.  To the extent such a response is required, Croghan is without sufficient knowledge or information to form a belief about the truth of the allegations in that paragraph and therefore denies them.

### II. Parties

1.     Croghan lacks the requisite information or belief to respond to the allegations in Paragraph 1, and based thereon denies the allegations in that paragraph.

2.     Croghan admits the allegations of Paragraph 2.

### III. Jurisdiction and Venue

3.     Croghan admits this Court has subject matter jurisdiction over this action.  Croghan is without sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in Paragraph 3 and therefore denies them.

4.     Croghan lacks the requisite information or belief to respond to the allegations in Paragraph 4, and based thereon denies the allegations in that paragraph.

5.     Croghan admits the allegations in Paragraph 5.

### IV. Intra-District Assignment

6.     In response to Paragraph 6, Croghan admits that he resides in Santa Cruz County.  As to the remaining allegations of Paragraph 6, Croghan lacks the requisite information or belief to respond to such allegations, and based thereon denies the remaining allegations in that paragraph.

# V. Factual Background

7.      In response to Paragraph 7, Croghan admits that Snap is an online platform which assists sports teams and coaches to raise money through online donation campaigns.  Croghan denies the remaining allegations of Paragraph 7.

8.      In response to Paragraph 8, Croghan admits that Snap is directed at the marketplace to support teams and other platforms.  Croghan denies the remaining allegations of Paragraph 8.

9.      In response to Paragraph 9, Croghan denies that Snap is the creator of the online gift fundraising industry.  Croghan denies the remaining allegations of Paragraph 9.

10.      In response to Paragraph 10, Croghan admits that Snap operates throughout the United States.  Croghan denies the remaining allegations of Paragraph 10.

11.      In response to Paragraph 11, Croghan lacks the requisite information or belief to respond to the allegations contained therein, and based thereon denies the allegations in that paragraph.

12.      In response to Paragraph 12, Croghan admits that Snap is available to teams, coaches, and teachers through its employees, including Snap's sales representatives.  Croghan is without sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in Paragraph 12 and therefore denies them.

13.      Croghan denies the allegations of Paragraph 13.

14.      In response to Paragraph 14, Croghan denies that he began an independent contractor relationship with Snap in May 2014.  Rather, Croghan commenced an employment relationship with Snap in May 2014 and was improperly misclassified by Snap as an independent contractor.

15.      In response to Paragraph 15, Croghan denies that his employment relationship with Snap commenced on July 18, 2017.  Rather, Croghan commenced

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

his employment relationship with Snap in May 2014 and had been improperly misclassified by Snap as an independent contractor.

16. In response to Paragraph 16, Croghan denies that he voluntarily signed the Sales Representative Agreement attached as Exhibit 1 to the Complaint. Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan is without sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in Paragraph 16 and therefore denies them.

17. In response to Paragraph 17, Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan further denies that he made any promises to Snap in connection with the Sales Representative Agreement. In response to the remaining allegations of Paragraph 17, the Sales Representative Agreement speaks for itself and Croghan denies the allegations to the extent the allegations contradict the Sales Representative Agreement.

18. In response to Paragraph 18, Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan further denies that he made any promises to Snap in connection with the Sales Representative Agreement. Croghan further denies that Snap is the owner of any Confidential, Proprietary and Trade Secret Information. In response to the remaining allegations of Paragraph 18, the Sales Representative Agreement speaks for itself and Croghan denies the allegations to the extent the allegations contradict the Sales Representative Agreement.

19. In response to Paragraph 19, Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan denies that Snap is the owner of any Confidential, Proprietary and Trade Secret Information. Croghan further denies that any of the Snap information qualifies as trade secret information. In response to the remaining allegations of Paragraph 19, the Sales Representative Agreement speaks for itself and Croghan denies the allegations to the extent the allegations contradict the Sales Representative Agreement.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

20. In response to Paragraph 20, Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan further denies that he made any promises to Snap in connection with the Sales Representative Agreement. In response to the remaining allegations of Paragraph 20, the Sales Representative Agreement speaks for itself and Croghan denies the allegations to the extent the allegations contradict the Sales Representative Agreement.

21. In response to Paragraph 21, Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan further denies that he made any promises to Snap in connection with the Sales Representative Agreement. Croghan denies that Snap is the owner of any Confidential, Proprietary and Trade Secret Information. In response to the remaining allegations of Paragraph 21, the Sales Representative Agreement speaks for itself and Croghan denies the allegations to the extent the allegations contradict the Sales Representative Agreement.

22. In response to Paragraph 22, Croghan denies that his employment commenced in July 2017. Rather, Croghan's employment with Snap commenced in May 2014 and Snap misclassified Croghan as an independent contractor. Croghan denies that Snap's Employee Handbook creates any valid or enforceable contract between Croghan and Snap. Croghan denies that Snap is the owner of any Confidential, Proprietary and Trade Secret Information. In response to the remaining allegations of Paragraph 22, Snap's Employee Handbook speaks for itself and Croghan denies the allegations to the extent the allegations contradict the Employee Handbook.

23. In response to Paragraph 23, Croghan denies that Snap is the owner of any Confidential, Proprietary and Trade Secret Information. Croghan denies that the Sales Representative Agreement is valid or enforceable. Croghan further denies that he made any promises to Snap in connection with the Sales Representative Agreement. Croghan denies that the Rep Attack Timeline ("RAT"), Campaign Data, Snap's Communications and Processes, Snap's Product Roadmap

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1    Prioritization, and Snap's Product Roadmap qualify as trade secrets.  Croghan

2    denies that his access to any of the above-referenced information changed after July

3    2017.  Croghan denies the remaining allegations of Paragraph 23.

4            24.    In response to Paragraph 24, Croghan denies that the Rep Attack

5    Timeline ("RAT") qualifies as a trade secret.  Croghan denies that the RAT provides

6    a competitive advantage to Snap.  Croghan denies that the information is not known

7    to and is not ascertainable by Snap's competitors.  Croghan denies that Snap has

8    identified the RAT with sufficient particularity as required by California Code of

9    Civil Procedure section 2019.210, thus Croghan lacks sufficient knowledge and

10   information to provide a response and on that basis denies the allegations of

11   Paragraph 24.

12           25.    In response to Paragraph 25, Croghan denies that Snap's Campaign

13   Data qualifies as a trade secret.  Croghan denies that the Campaign Data provides a

14   competitive advantage to Snap.  Croghan denies that the information is not known to

15   and is not ascertainable by Snap's competitors.  Croghan denies that Snap has

16   identified Snap's Campaign Data with sufficient particularity as required by

17   California Code of Civil Procedure section 2019.210, thus Croghan lacks sufficient

18   knowledge and information to provide a response and on that basis denies the

19   allegations of Paragraph 25.

20           26.    In response to Paragraph 26, Croghan denies that Snap's

21   Communication Strategies and Processes qualify as a trade secret.  Croghan denies

22   that the Snap's Communication Strategies and Processes provide a competitive

23   advantage to Snap.  Croghan denies that the information is not known to and is not

24   ascertainable by Snap's competitors.  Croghan denies that Snap's Communication

25   Strategies and Processes enable Snap fundraisers to raise more money than

26   fundraisers undertaken by its competitors.  Croghan denies that Snap has identified

27   Snap's Communication Strategies and Processes with sufficient particularity as

28   required by California Code of Civil Procedure section 2019.210, thus Croghan

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

**FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL**

lacks sufficient knowledge and information to provide a response and on that basis denies the allegations of Paragraph 26.

27.    In response to Paragraph 27, Croghan denies that Snap's Product Roadmap Prioritization qualifies as a trade secret.  Croghan denies that Snap has identified Snap's Product Roadmap Prioritization with sufficient particularity as required by California Code of Civil Procedure section 2019.210, thus Croghan lacks sufficient knowledge and information to provide a response and on that basis denies the allegations of Paragraph 27.

28.    In response to Paragraph 28, Croghan denies that Snap's Product Roadmap qualifies as a trade secret.  Croghan denies that Snap's Product Roadmap involves any technical or engineering information.  Croghan denies that Snap's Product Roadmap better serve Snap's customers.  Croghan denies that Snap's Product Roadmap facilitates the work of its sales representatives.  Croghan denies that Snap has identified Snap's Product Roadmap with sufficient particularity as required by California Code of Civil Procedure section 2019.210, thus Croghan lacks sufficient knowledge and information to provide a response and on that basis denies the allegations of Paragraph 28.

29.    In response to Paragraph 29, Croghan denies that Snap is the owner of any trade secret information.  Croghan denies that Snap protects the secrecy of alleged trade secret information.

30.    In response to Paragraph 30, Croghan admits that he resigned from Snap on June 1, 2018.  In response to the remaining allegations of Paragraph 30, the resignation letter speaks for itself and Croghan denies the allegations to the extent the allegations contradict the resignation letter.

31.    In response to Paragraph 31, Croghan denies that the Sales Representative Agreement is valid or enforceable.  Croghan denies that he obtained any unfair competitive advantage over Snap.  Croghan denies the remaining allegations of Paragraph 31.

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

32.     In response to Paragraph 32, Croghan denies that his current employer is attempting to copy Snap's fundraising tools and approaches and denies that his current employer is attempting to misappropriate Snap's trade secret information. Croghan denies that Snap is the owner of any trade secret information.

33.     In response to Paragraph 33, Croghan denies that Vertical Raise is a "copycat wannabe."

34.     In response to Paragraph 34, Croghan lacks the requisite information or belief to respond to such allegations, and based thereon denies the allegations in this paragraph.

35.     In response to Paragraph 35, Croghan denies that Vertical Raise's online gift donation offering simulates or attempts to simulate Snap's offering in design and function.

36.     In response to Paragraph 36, Croghan denies that Vertical Raise is a new entrant in the industry.  Croghan denies that he took steps to ferret out information about Snap's product pipeline and future business plans.  Croghan denies that he had decided, by May 22, 2018, to resign from Snap.  Croghan denies that he ferreted out any additional trade secret information.

37.     In response to Paragraph 37, Croghan denies that he performed services for Vertical Raise's benefit while still employed by Snap.

38.     In response to Paragraph 38, Croghan denies that he performed services for Vertical Raise's benefit while still employed by Snap.  The referenced YouTube video is of the Santa Clara High School Football Team, which is still a customer of Snap.  Croghan denies all remaining allegations of Paragraph 38.

39.     In response to Paragraph 39, Croghan denies that he performed services for Vertical Raise's benefit while still employed by Snap.  The referenced YouTube video is of the Santa Clara High School Football Team, which is still a customer of Snap.  Croghan denies all remaining allegations of Paragraph 39.

40.     In response to Paragraph 40, Croghan admits that he deleted duplicate

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

campaign entries.  Croghan denies that the deletions were without Snap's permission and in fact such deletions are regularly performed by Snap's employees because duplicate entries are a regular occurrence at Snap.  Croghan is without sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in Paragraph 40 and therefore denies them.

41.     In response to Paragraph 41, Croghan admits that Snap previously ran campaigns for Branham High School ("BHS") football.  Croghan denies that the BHS campaign for 2018 was ever set during Croghan's employment with Snap because, among other reasons, BHS did not hire a new head coach until after Croghan's employment with Snap was terminated.  Croghan denies that any campaigns for BHS were based upon the RAT.  Croghan denies all remaining allegations of Paragraph 41.

42.     In response to Paragraph 42, Croghan denies that the YouTube video is of the BHS team.  The referenced YouTube video is of the Santa Clara High School Football Team, which is still a customer of Snap.  Croghan is without sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in Paragraph 42 and therefore denies them.

43.     Croghan denies all allegations in Paragraph 43.

44.     In response to Paragraph 44, Croghan admits that Snap ran a 2017 campaign for San Lorenzo Valley ("SLV") football.  Croghan admits that SLV football's varsity program ran a campaign with Snap beginning on May 22, 2018, which included a video that was posted for Snap's campaign that ran until completion.  Croghan admits that he ran a campaign for SLV football's freshman program after his employment with Snap was terminated.  Croghan denies using any alleged Snap trade secrets for a potential 2018 fundraising campaign.  Croghan admits deleting duplicate SLV entries from Snap's network, but denies that non-duplicate SLV entries were deleted.  Croghan denies that any campaigns for SLV football were based upon the RAT.  Croghan denies all remaining allegations of

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Paragraph 44.

45.    In response to Paragraph 45, Croghan admits that Saratoga High School ("SHS") football ran its first campaign with Snap in 2018 for its varsity program. Croghan admits the SHS football's varsity campaign began on May 21, 2018 and continued to run with Snap until completion.  Croghan admits that he ran a campaign for SHS football's freshman program after his employment with Snap was terminated.  Croghan denies using any alleged Snap trade secrets for a potential 2018 fundraising campaign.  Croghan admits that duplicate SHS entries were deleted from Snap's network, but denies that non-duplicate SHS entries were deleted.  Croghan denies that any campaigns for SHS football were based upon the RAT.  Croghan denies all remaining allegations of Paragraph 45.

46.    In response to Paragraph 46, Croghan denies that he solicited BHS, SLV, or SHS.  Croghan denies that he used or disclosed any Snap trade secrets in soliciting BHS, SLV, or SHS, or in launching those fundraisers for Vertical Raise. Croghan denies all remaining allegations of Paragraph 46.

47.    In response to Paragraph 47, this allegation is argumentative and contains no substance requiring a response in accordance with Federal Rule of Civil Procedure, Rule 8.  Nonetheless, to the extent a response is required, Croghan denies all allegations contained in Paragraph 47.

48.    In response to Paragraph 48, Croghan admits that a former coworker began employment with a competitor, Eteamsponsor, and that Croghan inquired as to how he and Snap should approach this situation.  Croghan admits that it is well known that California has strict laws against non-compete agreements, including Business and Professions Code section 16600.  Croghan denies the remaining allegations of Paragraph 48.

49.    In response to Paragraph 49, Croghan admits that he met with Snap executives on May 4, 2018.  Croghan denies that this meeting came "out of the blue."  This meeting was planned at the insistence of Snap's management several

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

016297.00010
21646403.1

weeks in advance.  Croghan is without sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in Paragraph 49 and therefore denies them.

50.     In response to Paragraph 50, Croghan admits that he met with Snap CEO, Cole Morgan, and voiced his disagreement with the direction of Snap. Croghan admits that Mr. Morgan spoke of vague plans about Snap's future, but denies that Mr. Morgan disclosed any trade secrets.  Croghan admits that he reiterated his disagreement with the direction of Snap.  Croghan denies all remaining allegations of Paragraph 50.

51.     In response to Paragraph 51, Croghan admits that he met with Snap's Director of Product and voiced his disagreement with the direction of Snap. Croghan admits that he brainstormed with Snap's Director of Product about Croghan's ideas as to how to improve Snap.  Croghan admits that Snap's Director of Product seemed to be receptive to Croghan's ideas.  Croghan admits that Snap's Director of Product responded to Croghan's subsequent text messages with "Thanks brother, I really appreciated it too.  Got some great nuggets from the convo". Croghan denies that any trade secrets were disclosed at this meeting.  Croghan denies the remaining allegations of Paragraph 51.

52.     In response to Paragraph 52, Croghan admits that he had text communications with Snap's Director of Product.  In response to the remaining allegations of Paragraph 52, the text communications speak for themselves and Croghan denies the allegations to the extent the allegations contradict the text communications.

53.     In response to Paragraph 53, Croghan admits that duplicate entries for BHS, SLV, and SHS were deleted, but denies that non-duplicate entries were deleted.  Croghan admits that he had text communications with Kenny Strivers, the National Sales Manager.  In response to the remaining allegations of Paragraph 53, the text communications speak for themselves and Croghan denies the allegations to

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

**FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL**

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

the extent the allegations contradict the text communications.

54.     In response to Paragraph 54, Croghan admits that he had text communications with Kenny Strivers, the National Sales Manager.  In response to the remaining allegations of Paragraph 54, the text communications speak for themselves and Croghan denies the allegations to the extent the allegations contradict the text communications.

55.     In response to Paragraph 55, Croghan admits that he participated in a monthly sales call on June 1, 2018.  Croghan denies that any trade secret information was discussed on this phone call.  Croghan admits that he had text communications with Kenny Strivers, the National Sales Manager.  The text communications speak for themselves and Croghan denies the allegations in Paragraph 55 to the extent the allegations contradict the text communications. Croghan admits that he provided written resignation from Snap on June 1, 2018.  In response to the remaining allegations of Paragraph 55, Croghan's resignation letter speaks for itself and Croghan denies the allegations in Paragraph 55 to the extent the allegations contradict Croghan's written resignation.  Croghan lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in paragraph 55 and therefore denies them.

56.     In response to Paragraph 56, the letter from Snap to Croghan, and the letter from Croghan's attorney to Snap, speak for themselves and Croghan denies the allegations to the extent the allegations contradict the letters.

57.     Croghan denies all allegations in Paragraph 57.

## VI. Causes of Action

### First Cause of Action: Defend Trade Secrets Act of 2016

58.     In response to Paragraph 58, Croghan repeats and incorporates the admissions and denials of the paragraphs of the Complaint set forth above, as if fully set forth herein.

59.     Croghan denies all allegations in Paragraph 59.

60.  Croghan denies all allegations in Paragraph 60.

61.  Croghan denies all allegations in Paragraph 61.

62.  Croghan denies all allegations in Paragraph 62.

63.  Croghan denies all allegations in Paragraph 63.

64.  Croghan denies all allegations in Paragraph 64.

65.  Croghan denies all allegations in Paragraph 65.

66.  Croghan denies all allegations in Paragraph 66.

67.  Croghan denies all allegations in Paragraph 67.

68.  Croghan denies all allegations in Paragraph 68.

69.  Croghan denies all allegations in Paragraph 69.

70.  Croghan denies all allegations in Paragraph 70.

**Second Cause of Action: California Uniform Trade Secrets Act**

71.  In response to Paragraph 71, Croghan repeats and incorporates the admissions and denials of the paragraphs of the Complaint set forth above, as if fully set forth herein.

72.  Croghan denies all allegations in Paragraph 72.

73.  Croghan denies all allegations in Paragraph 73.

74.  Croghan denies all allegations in Paragraph 74.

75.  Croghan denies all allegations in Paragraph 75.

76.  Croghan denies all allegations in Paragraph 76.

**Third Cause of Action: Breach of Contract**

77.  In response to Paragraph 77, Croghan repeats and incorporates the admissions and denials of the paragraphs of the Complaint set forth above, as if fully set forth herein.

78.  In response to Paragraph 78, Croghan denies that the Sales Representative Agreement is valid or enforceable.

79.  Croghan denies all allegations in Paragraph 79.

80.  Croghan denies all allegations in Paragraph 80.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

**FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL**

81.     Croghan denies all allegations in Paragraph 81.

**Fourth Cause of Action: Breach of Common Law Duty of Loyalty**

82.     In response to Paragraph 82, Croghan repeats and incorporates the admissions and denials of the paragraphs of the Complaint set forth above, as if fully set forth herein.

83.     In response to Paragraph 83, Croghan denies that his employment relationship with Snap commenced on July 18, 2017; rather, Croghan's employment relationship with Snap commenced in May 2014.  Croghan admits that his resignation was effective June 1, 2018.

84.     In response to Paragraph 84, Croghan admits that he was in an employment relationship with Snap until June 1, 2018.  The remainder of the allegations in Paragraph constitutes a legal conclusion and requires no response.  To the extent a response is required, Croghan denies the remaining allegations in Paragraph 84.

85.     In response to Paragraph 85, the allegations in Paragraph 85 constitute legal conclusions and require no response.  To the extent a response is required, Croghan denies the allegations in Paragraph 85.

86.     In response to Paragraph 86, Croghan admits he frequently deleted duplicates of Campaign Data that was superfluous and unnecessary throughout his employment with Snap, with the knowledge and consent of Snap.  Croghan denies all remaining allegations of Paragraph 86.

87.     In response to Paragraph 87, Croghan admits he frequently deleted duplicates of Campaign Data that was superfluous and unnecessary throughout his employment with Snap, with the knowledge and consent of Snap.  Croghan denies all remaining allegations of Paragraph 87.

88.     Croghan denies all allegations in Paragraph 88.

89.     Croghan denies all allegations in Paragraph 89.

90.     Croghan denies all allegations in Paragraph 90.

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

91.     Croghan denies all allegations in Paragraph 91.

**Fifth Cause of Action: Violation of California Penal Code § 502**

92.     In response to Paragraph 92, Croghan repeats and incorporates the admissions and denials of Paragraphs 1-17, 30-31, 37, 40, and 83-90 of the Complaint set forth above, as if fully set forth herein.

93.     In response to Paragraph 93, Croghan lacks the requisite information or belief to respond to the allegations in this paragraph, and based thereon denies such allegations.

94.     Croghan denies all allegations in Paragraph 94.

95.     Croghan denies all allegations in Paragraph 95.

96.     Croghan denies all allegations in Paragraph 96.

97.     Croghan denies all allegations in Paragraph 97.

98.     Croghan denies all allegations in Paragraph 98.

**VII. Prayer for Relief**

Plaintiff's Prayer for Relief do not require an answer.  To the extent such a response is required, Croghan denies that Plaintiff is entitled to the relief sought in its prayer, including Paragraphs 1-8 on pages 19-20 of the Complaint.

**GENERAL DENIAL**

Croghan generally denies any liability to Plaintiff.  To the extent that any allegations in the Complaint have not been specifically admitted or denied, they are hereby denied.

**AFFIRMATIVE DEFENSES**

By alleging the Affirmative Defenses set forth below, Croghan does not agree or concede that he bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.  For its Affirmative Defenses to the Complaint, Croghan alleges, on information and belief, as follows:

/ / /

/ / /

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## FIRST AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

1.      As a separate affirmative defense, Croghan alleges that Snap has failed to mitigate damages by failing to take such actions as are reasonably necessary to minimize any loss that may have been sustained.  Among other things, Snap alleges that it suffered loss due to the alleged loss of Branham High School football as a client (see Paragraphs 41-43).  In support, Snap alleges that Croghan posted a YouTube video of Branham High School football in late May 2018.  However, the YouTube video is of the Santa Clara High School Football Team, which is still a customer of Snap.  In addition, the Complaint fails to allege as to how Snap has been damaged by Croghan's legitimate de-duplication efforts of Campaign Data which was within the course and scope of his employment rendering it impossible for Croghan to know what mitigation efforts Snap should undertake.  Discovery in this matter has not yet begun.  Croghan reserves all rights to introduce other evidence and testimony gathered throughout this case at the time of trial, including documents produced by the parties or third parties, deposition testimony from the parties or third parties, and any disclosures supplied by the parties in accordance with the Federal Rules of Civil Procedure.

## SECOND AFFIRMATIVE DEFENSE

### (Actions of Plaintiff and Third Parties)

2.      As a separate affirmative defense, Croghan alleges that Croghan's liability, if any, with respect to the Complaint, which liability is expressly denied by Croghan, arose wholly or in part by reason of the acts, omissions, or negligence of Snap and/or third-parties and as such Snap is entitled to no relief from Croghan. As set forth more fully in the Counterclaim alleged below, Snap is liable to Croghan for numerous violations of the California Labor Code, IWC Wage Order No. 4, the Fair Employment and Housing Act, and the Family Medical Leave Act.  Croghan realleges and incorporates herein by this reference Paragraphs 1 through 118 of the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Counterclaim.  Furthermore, on June 3, 2017, Croghan's daughter was born with a rare chromosomal abnormality that required her to remain hospitalized at Stanford Children's Hospital in Palo Alto for the entire duration of her life, a period of only seven months.  Croghan required a leave of absence to be with his daughter, who passed away on December 28, 2017.  However, Snap refused to provide Croghan with protected family and medical leave.  In fact, even though Croghan was suffering from immense emotional distress in June and July 2017, Snap pressured Croghan to sign the alleged Employment Agreement in July 2017, even going so far as to threaten to terminate Croghan if he did not sign the Employment Agreement. Moreover, the Employment Agreement contains invalid and/or unconscionable terms, including the provision that Snap is free to terminate Croghan's employment at-will, with or without cause, but that Croghan must provide ten days' notice before he can terminate the employment relationship.  Such provisions violate Business and Professions Code section 16600.  In addition, Snap failed to perform as required under Croghan's Employment Agreement.  Specifically, the Employment Agreement claims that Croghan was to receive a promotion upon signing the Employment Agreement which was the consideration to be provided by Snap for the new obligations to which Croghan was to be bound.  In reality Croghan received a demotion as a result of the decrease in pay upon signing the Employment Agreement.  In addition, third parties, such as the customers identified in the Complaint, are free to do business with whomever they choose.

## THIRD AFFIRMATIVE DEFENSE

### (Consent)

3.     As a separate affirmative defense, Croghan alleges that Snap consented to and approved of all or some of the acts and omissions about which Snap now complains and is thus barred from pursuing its claims.  Among other things, the alleged TSI was disclosed to Croghan when his employment with Snap began in May 2014.  Snap has not alleged that Croghan had any written agreement to refrain

- 17 -

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

from disclosing such TSI until over three years later.  Thus, such TSI was freely distributed and accessible without any written covenants or other protections for over three years, and more than two years prior to the enactment of the Defend Trade Secrets Act of 2016.  Furthermore, a number of employees of Snap left the employment of Snap prior to Snap's distribution of the 2017 agreements.  Thus, these employees were freely given access to Snap's alleged TSI for several years without any written covenants or other protections from disclosure.  California has rejected the inevitable disclosure doctrine since at least 2002.  Accordingly, Snap cannot prevent, and in fact consented to, Croghan's (and other former employees) alleged use of the alleged TSI in subsequent employment.

## FOURTH AFFIRMATIVE DEFENSE
### (Offset)

4.     As a separate affirmative defense, without conceding that any act of Croghan caused damage to Snap in any respect, Croghan is entitled to offset and recoup against any judgment that may be entered for Snap by all obligations of Snap owing to Croghan.  As set forth more fully in the Counterclaim alleged below, Snap is liable to Croghan for numerous violations of the California Labor Code, IWC Wage Order No. 4, the Fair Employment and Housing Act, and the Family Medical Leave Act.  Croghan realleges and incorporates herein by this reference Paragraphs 1 through 118 of the Counterclaim.  Accordingly, any recovery that Snap may obtain on its affirmative claims alleged in the Complaint must be offset by the damages awarded to Croghan under the Counterclaim.

## FIFTH AFFIRMATIVE DEFENSE
### (Waiver, Relinquishment, Abandonment, and Estoppel)

5.     As a separate affirmative defense, Croghan alleges that by conduct, representations, and omissions, Snap has waived, relinquished, abandoned, and/or is estopped to assert, any claim for relief against Croghan respecting the matters that are the subject of the Complaint.  Among other things, the alleged TSI was disclosed

016297.00010
21646403.1
FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

to Croghan when his employment with Snap began in May 2014.  Snap has not alleged that Croghan had any written agreement to refrain from disclosing such TSI until over three years later.  Thus, such TSI was freely distributed and accessible without any written covenants or other protections for over three years, and more than two years prior to the enactment of the Defend Trade Secrets Act of 2016.  Furthermore, a number of employees of Snap left the employment of Snap prior to Snap's distribution of the 2017 agreements.  Thus, these employees were freely given access to Snap's alleged TSI for several years without any written covenants or other protections from disclosure.  California has rejected the inevitable disclosure doctrine since at least 2002.  Accordingly, Snap cannot prevent, and in fact waived, are estopped, relinquished, abandoned any trade secret protection that could conceivably attach to the alleged TSI.

## SIXTH AFFIRMATIVE DEFENSE

### (Spoliation)

6.     As a separate affirmative defense, Croghan alleges that each cause of action set forth in the Complaint is barred or limited because of the altering, spoiling, damaging, destruction, or loss of evidence by Snap.  Based upon the allegations in the Complaint, Croghan is informed and believes that Snap has altered, spoiled, damaged, destroyed, or lost certain evidence relevant to the claims and/or defenses in this action.  In particular, Paragraph 40 of the Complaint contains a table which appears to have been altered to fit Snap's narrative that Croghan was accessing and deleting only certain Campaign Data from Snap's network.  In reality, Snap's data entry system often results in duplicate Campaign Data and Snap employees are required to de-duplicate this superfluous Campaign Data.  These administrative de-duplication efforts are done regularly and are clearly within the scope of Snap's employees.  In addition, Paragraph 41-43 claims that referenced YouTube video is of the Branham High School football team.  In reality, this YouTube video is of the Santa Clara High School Football Team, which is still a

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

**FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL**

customer of Snap.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

7.     As a separate affirmative defense, Croghan alleges that as to each cause of action in the Complaint, Snap would be unjustly enriched by any recovery against Croghan.  As set forth more fully in the Counterclaim alleged below, Snap is liable to Croghan for numerous violations of the California Labor Code, IWC Wage Order No. 4, the Fair Employment and Housing Act, and the Family Medical Leave Act. Croghan realleges and incorporates herein by this reference Paragraphs 1 through 118 of the Counterclaim.  Furthermore, on June 3, 2017, Croghan's daughter was born with a rare chromosomal abnormality that required her to remain hospitalized at Stanford Children's Hospital in Palo Alto for the entire duration of her life, a period of only seven months.  Croghan required a leave of absence to be with his daughter, who passed away on December 28, 2017.  However, Snap refused to provide Croghan with protected family and medical leave.  In fact, even though Croghan was suffering from immense emotional distress in June and July 2017, Snap pressured Croghan to sign the alleged Employment Agreement in July 2017, even going so far as to threaten to terminate Croghan if he did not sign the Employment Agreement.  Moreover, the Employment Agreement contains invalid and/or unconscionable terms, including the provision that Snap is free to terminate Croghan's employment at-will, with or without cause, but that Croghan must provide ten days' notice before he can terminate the employment relationship.  Such provisions violate Business and Professions Code section 16600.  In addition, Snap failed to perform as required under Croghan's Employment Agreement. Specifically, the Employment Agreement claims that Croghan was to receive a promotion upon signing the Employment Agreement which was the consideration to be provided by Snap for the new obligations to which Croghan was to be bound.  In reality Croghan received a demotion as a result of the decrease in pay upon signing

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

016297.00010
21646403.1

1  the Employment Agreement.  Accordingly, Snap would be unjustly enriched if it

2  were afforded any recovery against Croghan pursuant to the allegations in its

3  Complaint..

4  ### EIGHTH AFFIRMATIVE DEFENSE

5  ### (Failure to Perform)

6      8.    As a separate affirmative defense, Croghan alleges that each cause of

7  action alleged in the Complaint is excused by Snap's failure to perform under its

8  agreements.  Specifically, the Employment Agreement claims that Croghan was to

9  receive a promotion upon signing the Employment Agreement which was the

10  consideration to be provided by Snap for the new obligations to which Croghan was

11  to be bound.  Such conduct by Snap is a failure of performance and failure of

12  consideration.

13  ### NINTH AFFIRMATIVE DEFENSE

14  ### (Excuse)

15      9.    As a separate affirmative defense, Croghan alleges that each cause of

16  action alleged in the Complaint is based upon actions which are excused by Snap's

17  wrongful conduct.  On June 3, 2017, Croghan's daughter was born with a rare

18  chromosomal abnormality that required her to remain hospitalized at Stanford

19  Children's Hospital in Palo Alto for the entire duration of her life, a period of only

20  seven months.  Croghan required a leave of absence to be with his daughter, who

21  passed away on December 28, 2017.  However, Snap refused to provide Croghan

22  with protected family and medical leave.  In fact, even though Croghan was

23  suffering from immense emotional distress in June and July 2017, Snap pressured

24  Croghan to sign the alleged Employment Agreement in July 2017, even going so far

25  as to threaten to terminate Croghan if he did not sign the Employment Agreement.

26  Furthermore, the Employment Agreement claims that Croghan was to receive a

27  promotion upon signing the Employment Agreement which was the consideration to

28  be provided by Snap for the new obligations to which Croghan was to be bound.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

Moreover, the Employment Agreement contains invalid and/or unconscionable terms, including the provision that Snap is free to terminate Croghan's employment at-will, with or without cause, but that Croghan must provide ten days' notice before he can terminate the employment relationship. Such provisions violate Business and Professions Code section 16600

## **TENTH AFFIRMATIVE DEFENSE**

### **(Unclean Hands)**

10.     As a separate affirmative defense, Croghan alleges that Snap's Complaint, and each claim therein, is barred by the doctrine of unclean hands. On June 3, 2017, Croghan's daughter was born with a rare chromosomal abnormality that required her to remain hospitalized at Stanford Children's Hospital in Palo Alto for the entire duration of her life, a period of only seven months. Croghan required a leave of absence to be with his daughter, who passed away on December 28, 2017. However, Snap refused to provide Croghan with protected family and medical leave. In fact, even though Croghan was suffering from immense emotional distress in June and July 2017, Snap pressured Croghan to sign the alleged Employment Agreement in July 2017, even going so far as to threaten to terminate Croghan if he did not sign the Employment Agreement. Furthermore, the Employment Agreement claims that Croghan was to receive a promotion upon signing the Employment Agreement which was the consideration to be provided by Snap for the new obligations to which Croghan was to be bound. Moreover, the Employment Agreement contains invalid and/or unconscionable terms, including the provision that Snap is free to terminate Croghan's employment at-will, with or without cause, but that Croghan must provide ten days' notice before he can terminate the employment relationship. Such provisions violate Business and Professions Code section 16600.

/ / /

/ / /

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## ELEVENTH AFFIRMATIVE DEFENSE

### (Contractual Bar)

11.   As a separate affirmative defense, Croghan alleges that Snap is contractually barred from recovering any incidental, consequential, special, punitive, or other indirect damages from Croghan.  Specifically, while Croghan denies that the Agreement alleged in Paragraph 16 of the Complaint is valid or enforceable, to the extent the Court finds the Agreement valid and enforceable, the Agreement is a contractual bar to the tort claims asserted against Croghan for the same conduct as the alleged cause of action for Breach of Contract.  BNSF Ry. Co. v. San Joaquin Valley R. Co., 2011 WL 3328398 *5-6 (E.D. Cal. August 2, 2011); Erlich v. Menezes, 21 Cal. 4th 543, 551-52 (1999).

## TWELFTH AFFIRMATIVE DEFENSE

### (Invalidity and Unenforceability)

12.   As a separate affirmative defense, Croghan alleges that Snap's Complaint, and each claim therein, is barred on the ground that the contracts forming the basis of the claims are invalid and/or unenforceable.  On June 3, 2017, Croghan's daughter was born with a rare chromosomal abnormality that required her to remain hospitalized at Stanford Children's Hospital in Palo Alto for the entire duration of her life, a period of only seven months.  Croghan required a leave of absence to be with his daughter, who passed away on December 28, 2017. However, Snap refused to provide Croghan with protected family and medical leave.  In fact, even though Croghan was suffering from immense emotional distress in June and July 2017, Snap pressured Croghan to sign the alleged Employment Agreement in July 2017, even going so far as to threaten to terminate Croghan if he did not sign the Employment Agreement.  Moreover, the Employment Agreement contains invalid and/or unconscionable terms, including the provision that Snap is free to terminate Croghan's employment at-will, with or without cause, but that

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

016297.00010
21646403.1

1  Croghan must provide ten days' notice before he can terminate the employment

2  relationship.  Such provisions violate Business and Professions Code section 16600.

3  ## THIRTEENTH AFFIRMATIVE DEFENSE

4  ### (No Fiduciary Duty)

5        13.    Snap's Fourth Cause of Action is barred as a matter of law because

6  Croghan was not a fiduciary of Snap and no non-fiduciary duty of loyalty exists.

7  Croghan was never in a fiduciary relationship with Snap.  It is axiomatic that a claim

8  for breach of fiduciary duty cannot lie if Snap cannot establish that Croghan was a

9  fiduciary.  "In California, there is no tort for 'breach of duty of loyalty' that is

10  distinct from the recognized tort of 'breach of fiduciary duty.'"  Mattel, Inc. v. MGA

11  Entm't, 2011 WL 8427611, at *3 (C.D. Cal. August 28, 2011) ("[N]on-fiduciary

12  employees owe no duty of loyalty to their employers."); Mamou v. Trendwest

13  Resorts, Inc., 165 Cal. App. 4t 686, 719 (2008) ("An employee does not breach his

14  duty of loyalty by preparing to compete with his employer.").

15  ## FOURTEENTH AFFIRMATIVE DEFENSE

16  ### (Employee Safe Harbor)

17        14.    Without admitting that the Complaint states a claim, Snap's Fifth

18  Cause of Action is barred under the safe harbor provision of California Penal Code

19  section 502 because the acts alleged against Croghan were within the scope of his

20  employment with Snap.  In particular, Paragraph 40 of the Complaint contains a

21  table which appears to have been altered to fit Snap's narrative that Croghan was

22  accessing and deleting only certain Campaign Data from Snap's network.  In reality,

23  Snap's data entry system often results in duplicate Campaign Data and Snap

24  employees are required to de-duplicate this superfluous Campaign Data.  These

25  administrative de-duplication efforts are done regularly and are clearly within the

26  scope of Snap's employees.

27  / / /

28  / / /

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Permission)

15.   Without admitting that the Complaint states a claim, Snap's Fifth Cause of Action is barred because the acts alleged against Croghan were not "without permission" as required under California Penal Code section 502.   In particular, Paragraph 40 of the Complaint contains a table which appears to have been altered to fit Snap's narrative that Croghan was accessing and deleting only certain Campaign Data from Snap's network.   In reality, Snap's data entry system often results in duplicate Campaign Data and Snap employees are required to de-duplicate this superfluous Campaign Data.   These administrative de-duplication efforts are done regularly and are clearly within the scope of Snap's employees. Penal Code section 502 requires that Croghan continue to access Snap's system after his authorization has been explicitly revoked by Snap, which is clearly not the case because his employment with Snap continued until June 1, 2018.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Additional Defenses)

16.   Croghan asserts that it may have other separate and additional defenses of which it is presently unaware, and hereby reserves the right to assert such additional defenses as discovery warrants.   Croghan also reserves the right to pursue any and all claims, cross-claims, and third-party complaints against Snap, any other parties named in the complaint or counterclaim, and other third parties.

WHEREFORE, Croghan requests that the Court enter judgment in his favor, for an award of his attorneys' fees and costs, and for such other and further relief as the Court deems appropriate.

## COUNTERCLAIM

Defendant Paul Croghan ("Counterclaimant") asserts the following counterclaims against Plaintiff Snap! Mobile, Inc. ("Counter-Defendant") and alleges as follows:

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. section 1367(a) as a counterclaim ancillary to the main action brought by Counter-Defendant.

2.    Venue in this Court is proper in that the counterclaim is ancillary to the main action brought by Counter-Defendant before this Court.

**PARTIES**

3.    Counterclaimant is a natural person domiciled in Santa Cruz, California.

4.    Counter-Defendant is a Delaware corporation with its principal place of business in Seattle, King County, State of Washington.

**GENERAL ALLEGATIONS**

5.    In May 2014, Counterclaimant was hired by Counter-Defendant as an "independent contractor" sales representative.

6.    Counter-Defendant operates an online platform to assist sports teams, coaches, and teachers to raise money through online donation campaigns.

7.    Counter-Defendant makes its online platform available to teams, coaches, and teachers through its employees, including Counter-Defendant's sales representatives.

8.    During the period in which Counterclaimant was an independent contractor, Counter-Defendant retained and exercised pervasive control over Counterclaimant's work such that he was in fact an employee of Counter-Defendant under California law.

9.    During the period in which Counterclaimant was an independent contractor, Counter-Defendant retained and exercised pervasive control over Counterclaimant's wages, hours and working conditions.

10.    Counter-Defendant retained the exclusive right to control the manner and means by which Counterclaimant performed his job.

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

11.     Counterclaimant received work assignments from Counter-Defendant.

12.     Counterclaimant was subject to discipline by Counter-Defendant if he refused a work assignment.

13.     Counter-Defendant directed the manner in which Counterclaimant was to perform his work, providing Counterclaimant with detailed instructions.

14.     Counter-Defendant's instructions included, among other things, specific policies, techniques, and procedures to be used and/or followed by Counter-Defendant's sales representatives.

15.     Counterclaimant was subject to discipline by Counter-Defendant if he did not comply with Counter-Defendant's detailed instructions and requirements for the performance of his work.

16.     Counter-Defendant unilaterally set the compensation to be paid to Counterclaimant, and refused multiple attempts by Counterclaimant to negotiate this amount.

17.     Counter-Defendant required Counterclaimant to submit a weekly schedule for Counter-Defendant's approval.

18.     Counter-Defendant unilaterally set schedules and timelines for work completed by Counterclaimant.

19.     Counter-Defendant required Counterclaimant to use its equipment, computer systems, and email system, and issued Counterclaimant an email address associated with Counter-Defendant.

20.     Counter-Defendant required Counterclaimant to participate in weekly sales calls.

21.     Counter-Defendant required Counterclaimant to participate in bi-annual training.

22.     Counter-Defendant required Counterclaimant to participate in weekly video training.

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

016297.00010
21646403.1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

23.    Counter-Defendant unilaterally established monthly and quarterly sales goals for Counterclaimant.

24.    Counter-Defendant closely monitored Counterclaimant's performance, including Counterclaimant's progress towards his sales goals.

25.    Counterclaimant was subject to discipline by Counter-Defendant in the event Counterclaimant failed to meet the performance standards set by Counter-Defendant.

26.    Counter-Defendant unilaterally set the price charged to customers to Counterclaimant's services.

27.    When Counterclaimant did not follow Counter-Defendant's rules or instructions, he was subject to discipline.

28.    Counterclaimant provided services that were an integral part of Counter-Defendant's business enterprise.

29.    Counterclaimant performed sales work that was within the usual course of Counter-Defendant's business.

30.    Counterclaimant was not customarily engaged in a trade, occupation or business independently established from Counter-Defendant's business.

31.    Counterclaimant paid all of his own expenses.

32.    On July 18, 2017, Counter-Defendant unilaterally converted Counterclaimant from an independent contractor to an employee.

33.    As a condition of his employment, Counterclaimant was required to sign a Sales Representative Agreement on July 18, 2017. The Sales Representative Agreement is attached as Exhibit 1 to Counter-Defendant's Complaint, and its terms, conditions, and definitions are incorporated by reference.

34.    Once he was reclassified as an employee, Counterclaimant continued to perform the same job duties he has performed as an independent contractor.

35.    Counterclaimant made multiple attempts to negotiate his rate of pay with Counter-Defendant during its process of converting him to an employee, but

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

Counter-Defendant refused to consider any change to its plan.

36.     Despite Counter-Defendant's pervasive control over all aspects of its operations and Counterclaimant's performing work within the usual course of Counter-Defendant's business, Counter-Defendant classified Counterclaimant as an independent contractor before July 18, 2017.

37.     Counter-Defendant's classification and treatment of Counterclaimant as an independent contractor rather than an employee was unlawful.

38.     As a result of Counter-Defendant's misclassifying Counterclaimant as an independent contractor, Counter-Defendant unlawfully failed to indemnify Counterclaimant for employment-related expenses, including, among other things, printing costs, sales incentive costs, travel costs, mileage and fuel expenses, computer equipment, utilities, and cellular telephone expenses.

39.     As a result of Counter-Defendant's misclassifying Counterclaimant as an independent contractor, Counter-Defendant regularly failed to provide Counterclaimant a reasonable opportunity to take a timely 30 minute off-duty meal period to Counterclaimant when Counterclaimant worked more than five hours in a day.

40.     As a result of Counter-Defendant's misclassifying Counterclaimant as an independent contractor, Counter-Defendant regularly failed to authorize and permit timely rest periods to Counterclaimant when Counterclaimant worked more than three-and-one-half hours in a day.

41.     As a result of Counter-Defendant's misclassifying Counterclaimant as an independent contractor, Counter-Defendant regularly failed to pay Counterclaimant the California minimum wage for all hours worked.

42.     Counter-Defendant required and/or knowingly permitted Counterclaimant to work hours in excess of eight hours per day and/or 40 hours a week throughout the period covered by this lawsuit.

43.     As a result of Counter-Defendant misclassifying Counterclaimant as an independent contractor, Counter-Defendant willfully and knowingly failed to pay premium overtime compensation to Counterclaimant for hours worked in excess of eight hours per day and 40 hours in a week.

44.     As a result of Counter-Defendant misclassifying Counterclaimant as an independent contractor, Counter-Defendant has failed to record the actual hours worked by Counterclaimant.

45.     As a result of Counter-Defendant misclassifying Counterclaimant as an independent contractor, Counter-Defendant has failed to itemize the total hours worked on wage statements furnished to Counterclaimant.

46.     Counterclaimant is informed and believes, as a result of Counter-Defendant misclassifying Counterclaimant as an independent contractor, Counter-Defendant has not properly maintained payroll records showing actual hours worked and meal periods taken and missed each day by Counterclaimant.

47.     As a result of Counter-Defendant misclassifying Counterclaimant as an independent contractor, Counter-Defendant has willfully failed to pay Counterclaimant, upon termination of employment, all accrued compensation, including payment for missed meal and rest periods, minimum wage compensation, and payment of overtime compensation.

48.     By misclassifying Counterclaimant as an independent contractor, Counter-Defendant has sought to avoid various duties and obligations owed to employees under California's Labor Code and Industrial Welfare Commission ("IWC") Wage Orders, including the duty to indemnify employees for all expenses and losses necessarily incurred in connection with their employment (Cal. Lab. Code § 2802; IWC Wage Order No. 4, §§ 8-9); the duty to provide workers' compensation coverage (Cal. Lab. Code § 3200 *et seq.*); the duty to provide off-duty meal and rest periods (Cal. Lab. Code §§ 512, 226.7; IWC Wage Order No. 4 §§ 11-12); the duty to pay California minimum wage for all hours worked (Cal. Lab. Code

§§ 1182.11, 1182.12, 1197; Minimum Wage Order; IWC Wage Order No. 4, § 4); the duties to pay overtime premium pay and to document actual hours worked (Cal. Lab. Code § § 510, 1174, 226, 1194; IWC Wage Order No. 4, §§ 3, 7); and other legal obligations.

49.   Counterclaimant thus brings claims for failure to reimburse necessary business expenses and losses, failure to provide meal and rest periods or compensation in lieu thereof, unpaid minimum wage (and liquidated damages), unpaid overtime compensation, inaccurate itemized wage statements, waiting time penalties, statutory and civil penalties, interest, and attorneys' fees, pursuant to Cal. Lab. Code §§ 201-203, 226, 226.7, 510, 512, 1174, 1182.11, 1182.12, 1194, 1194.2, 1197, and 2802.

50.   On June 3, 2017, Counterclaimant's daughter was born with a rare chromosomal abnormality that required her to remain hospitalized at Stanford Children's Hospital in Palo Alto for the entire duration of her life, a period of only seven months.

51.   Counterclaimant required a leave of absence in order to be with his daughter, who passed away on December 28, 2017.

52.   Counter-Defendant refused to provide Counterclaimant with protected family and medical leave.

53.   Counterclaimant thus brings claims for failure to provide medical and family leave, pursuant to 29 U.S.C. § 2601, Cal. Govt. Code § 12945.2, Cal. Govt. Code § 12945.6 and 2 Cal. Code Regs. § 11035.

54.   Counterclaimant filed a Charge of Discrimination with the California Department of Fair Employment and Housing ("DFEH") on August 27, 2018 against Counter-Defendant, alleging violation of the California Family Rights Act ("CFRA") and New Parent Leave Act ("NPL"). He obtained a Right to Sue letter from the California DFEH regarding all of his claims covered by the California Fair Employment and Housing Act ("FEHA") on August 27, 2018.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## FIRST CLAIM FOR RELIEF

### (Violation of Cal. Labor Code § 2802)

55.     The allegations of Paragraphs 1 through 54 of the Counterclaim are realleged and incorporated herein by reference.

56.     While acting on the direct instruction of Counter-Defendant and discharging his duties for Counter-Defendant, Counterclaimant has incurred work-related expenses.  Such expenses include but are not limited to printing costs, sales incentives, travel, mileage, fuel expenses, computer equipment, utilities, and cellular telephone expenses.

57.     Counter-Defendant has failed to indemnify or in any manner reimburse Counterclaimant for these expenditures and losses.  By misclassifying Counterclaimant as an independent contractor, and further by requiring Counterclaimant to pay expenses and cover losses that Counterclaimant incurred in direct consequence of the discharge of Counterclaimant's duties for Counter-Defendant and/or in obedience to Counter-Defendant's direction, Counter-Defendant has violated Cal. Labor Code § 2802.

58.     As a direct and proximate result of Counter-Defendant's conduct, Counterclaimant has suffered substantial losses according to proof, as well as pre-judgment interest, costs, and attorney fees for the prosecution of this action.

59.     Counterclaimant requests relief as described below.

## SECOND CLAIM FOR RELIEF

### (Violation of Cal. Labor Code §§ 226.7 and 512 and IWC Wage Order No. 4)

60.     The allegations of Paragraphs 1 through 59 of the Counterclaim are realleged and incorporated herein by reference.

61.     Counterclaimant regularly worked in excess of five (5) hours per day without being afforded at least a 30-minute meal period in which he was relieved of his duties, as required by Cal. Lab. Code § § 226.7 and 512, and IWC Wage Order No. 4, § 11(A).

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

016297.00010
21646403.1

62.     Because Counter-Defendant failed to afford proper and timely meal periods, Counter-Defendant is liable to Counterclaimant for one hour of additional pay at the regular rate of compensation for each workday that proper meal periods were not provided, pursuant to Cal. Lab. Code § 226.7(b) and IWC Wage Order No. 4, § 11(B).

63.     By violating Cal. Lab. Code § § 226.7 and 512, and IWC Wage Order No. 4, § 11, Counter-Defendant is also liable for penalties, reasonable attorneys' fees, and costs under Cal. Lab. Code § § 218.5 and 1194.

64.     Counterclaimant requests relief as described below.

## THIRD CLAIM FOR RELIEF

**(Violation of Cal. Labor Code §§ 226.7 and 512 and IWC Wage Order No. 4)**

65.     The allegations of Paragraphs 1 through 64 of the Counterclaim are realleged and incorporated herein by reference.

66.     Counterclaimant regularly worked in excess of three-and-one-half (3.5) hours per day without being afforded at least a ten-minute rest period in which he was relieved of his duties, as required by Cal. Lab. Code § § 226.7 and 512, and IWC Wage Order No. 4, § 12(A).

67.     Because Counter-Defendant failed to afford proper and timely rest periods, Counter-Defendant is liable to Counterclaimant for one hour of additional pay at the regular rate of compensation for each workday that proper rest periods were not provided, pursuant to Cal. Lab. Code § 226.7(b) and IWC Wage Order No. 4, § 11(B).

68.     By violating Cal. Lab. Code § § 226.7 and 512, and IWC Wage Order No. 4, § 11, Counter-Defendant is also liable for penalties, reasonable attorneys' fees, and costs under Cal. Lab. Code § § 218.5 and 1194.

69.     Counterclaimant requests relief as described below.

/ / /

/ / /

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

016297.00010
21646403.1

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

## FOURTH CLAIM FOR RELIEF

## (Violation of Cal. Labor Code §§ 1182.11, 1182.12 and 1197 and IWC Wage Order No. 4)

70.     The allegations of Paragraphs 1 through 69 of the Counterclaim are realleged and incorporated herein by reference.

71.     At all times relevant to this Counterclaim, Labor Code § § 1182.11, 1182.12, and 1197, Wage Order No. 4, and the Minimum Wage Order were in full force and effect and required that Counterclaimant receive the minimum wage for all hours worked irrespective of whether nominally paid on an hourly, piece rate, or any other basis, at the rate of $9.00 per hour commencing July 1, 2014, $10.00 per hour commencing January 1, 2016, $10.50 per hour commencing January 1, 2017, and $11.00 per hour commencing January 1, 2018.

72.     Counter-Defendant failed to pay Counterclaimant for all hours worked at the statutory minimum wage rate, as required by law, including for time spent attending meetings and conferences.

73.     By failing to maintain adequate time records as required by Cal. Lab. Code § 1174(d) and IWC Wage Order No. 4, § 7(A), Counter-Defendant has made it difficult to calculate the minimum wage compensation due to Counterclaimant.

74.     As a direct and proximate result of the acts and/or omissions of Counter-Defendant, Counterclaimant has been deprived of minimum wages due in amounts to be determined at trial, and to additional amounts as liquidated damages, pursuant to Labor Code § §1194 and 1194.2.

75.     By violating Cal Labor Code§§ 1182.11, 1182.11 and 1197, IWC wage order No. 4, § 4, and the Minimum Wage Order, Counter-Defendant is also liable for reasonable attorneys' fees and costs under Cal. Labor Code§ 1194, and liquidated damages under Cal. Labor Code § 1194.2.

76.     Counterclaimant requests relief as described below.

/ / /

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

**FIFTH CLAIM FOR RELIEF**

**(Violation of Cal. Labor Code § 510 and IWC Wage Order No. 4)**

77.     The allegations of Paragraphs 1 through 76 of the Counterclaim are realleged and incorporated herein by reference.

78.     By failing to pay overtime compensation to Counterclaimant, Counter-Defendant has violated Cal. Labor Code § 510 and IWC wage order No. 4, § 3, which require overtime compensation to non-exempt employees.

79.     By failing to maintain adequate time records as required by Cal. Labor Code § 1174(d) and IWC wage order No. 4, § 7(A), Counter-Defendant has made it difficult to calculate the overtime compensation due Counterclaimant.

80.     As a result of Counter-Defendant's unlawful acts, Counterclaimant has been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, attorneys' fees, and costs, under Cal. Labor Code § 1194.

81.     By violating Cal. Labor Code § 510, Counter-Defendant is liable for civil penalties and attorneys' fees and costs under Cal. Labor Code §§ 558, 1194, and 1197.1.

82.     Counterclaimant requests relief as described below.

**SIXTH CLAIM FOR RELIEF**

**(Violation of Cal. Labor Code § 226 and IWC Wage Order No. 4)**

83.     The allegations of Paragraphs 1 through 82 of the Counterclaim are realleged and incorporated herein by reference.

84.     Cal. Labor Code § 226(a) and IWC wage order No. 4, § 7(B) require employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee. Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

85.     Counter-Defendant knowingly and intentionally failed to furnish Counterclaimant with timely, itemized statements showing the total hours worked, as required by Cal. Labor Code§ 226(a) and IWC wage order No. 4, § 7(B). As a result, Counter-Defendant is liable to Counterclaimant for the amounts provided by Cal. Labor Code§ 226(b) and for penalties, costs, and attorneys' fees.

86.     Counterclaimant requests relief as described below.

## SEVENTH CLAIM FOR RELIEF

### (Violation of Cal. Labor Code § 1174 and IWC Wage Order No. 4)

87.     The allegations of Paragraphs 1 through 86 of the Counterclaim are realleged and incorporated herein by reference.

88.     Counter-Defendant has violated Cal. Lab. Code § 1174 and IWC Wage Order No. 4 § 7(A) by willfully failing to keep required payroll records showing the actual hours worked each day by Counterclaimant. As a direct and proximate result of Counter-Defendant's failure to maintain payroll records, Counterclaimant has suffered actual economic harm as he has been precluded from accurately monitoring the number of hours worked and thus seeking all accrued minimum wages (and overtime pay).

89.     Counterclaimant requests relief as described below.

## EIGHTH CLAIM FOR RELIEF

### (Violation of Cal. Labor Code §§ 201-202)

90.     The allegations of Paragraphs 1 through 89 of the Counterclaim are realleged and incorporated herein by reference.

91.     Cal. Labor Code § 201 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon discharge.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND FOR JURY TRIAL

92.     Cal. Labor Code § 202 requires an employer to pay all compensation due and owing to an employee who quits within 72 hours of that employee quitting, unless the employee provides at least 72 hours' notice of quitting, in which case all compensation is due at the end of the employee's final day of work.

93.     Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201 or § 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to 30 work days.

94.     Counter-Defendant willfully failed and refused to timely pay compensation and wages, including unpaid meal and rest period compensation, minimum wage compensation, overtime compensation to van drivers and sums wrongfully deducted from compensation, to Counterclaimant, whose employment terminated. Counter-Defendant further willfully failed and refused to pay unpaid overtime pay to Counterclaimant. As a result, Counter-Defendant is liable to Counterclaimant for waiting time penalties, together with interest thereon and reasonable attorneys' fees and costs, under Cal. Labor Code section 203.

95.     Counterclaimant requests relief as described below.

## NINTH CLAIM FOR RELIEF

## (Violation of 29 U.S.C. § 2601 (FMLA) and California Government Code § 12945.2 (CFRA) *et seq.*)

96.     The allegations of Paragraphs 1 through 95 of the Counterclaim are realleged and incorporated herein by reference.

97.     Counterclaimant is informed and believes that Counter-Defendant is a covered employer, as that term is defined in 29 U.S.C. § 2601, *et seq*. and California Government Code § 12945.2, as well as applicable interpretive regulations.

98.     Counterclaimant was employed by Counter-Defendant for more than one year, and had in excess of 1250 hours of service during the 12 month period immediately preceding the date of his daughter's birth and hospitalization.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

99.    Upon information and belief, Counterclaimant was eligible to take family and medical leave.

100.    Upon information and belief, Counter-Defendant was aware of Counterclaimant's need for a leave of absence.

101.    Upon information and belief, Counter-Defendant was obligated to provide family and medical leave to Counterclaimant during his daughter's lifetime.

102.    Upon information and belief, Counter-Defendant did not permit Counterclaimant to take protected family and medical leave during his daughter's lifetime.

103.    Upon information and belief, the wrongful acts of Counter-Defendant herein described are unlawful employment practices in violation of the Family and Medical Leave Act (FMLA) and California Family Rights Act (CFRA).

104.    Upon information and belief, Counter-Defendant acted with oppression, fraud, and/or malice in committing the acts described herein.

105.    Counterclaimant requests relief as described below.

## TENTH CLAIM FOR RELIEF

### (Unfair Competition Law (UCL))

106.    The allegations of Paragraphs 1 through 105 of the Counterclaim are realleged and incorporated herein by reference.

107.    Cal. Business & Professions Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

108.    Cal. Business & Professions Code § 17204 allows "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the UCL.

109.    Beginning in May 2014, Counter-Defendant improperly, fraudulently, and unlawfully classified Counterclaimant as an independent contractor and has thereby committed unlawful, unfair, and/or fraudulent business acts and practices as

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

defined by Cal. Business & Professions Code § 17200, by engaging in the following:

      a.    failing to indemnify Counterclaimant for employment-related business expenses and losses;

      b.    failing and refusing to provide Counterclaimant with workers' compensation insurance;

      c.    failing and refusing to provide meal periods to Counterclaimant;

      d.    failing to pay minimum wage compensation to Counterclaimant;

      e.    failing to pay overtime compensation to Counterclaimant;

      f.    failing to provide accurate itemized wage statements to Counterclaimant;

      g.    failing to maintain payroll records showing the actual hours worked each day by Counterclaimant;

      h.    failing to pay all accrued overtime and meal and rest period compensation upon termination of Counterclaimant's employment; and

      i.    by intentionally, recklessly and/or negligently misrepresenting to Counterclaimant the true nature of his employment status.

110. The violations of these laws serve as unlawful, unfair, and/or fraudulent predicate acts and practices for purposes of Cal. Business and Professions Code § 17200.

111. As a direct and proximate result of Counter-Defendant's unlawful, unfair, and/or fraudulent acts and practices described herein, Counter-Defendant has received and continues to hold ill-gotten gains belonging to Counterclaimant. As a direct and proximate result of Counter-Defendant's unlawful business practices, Counterclaimant has suffered economic injuries including, but not limited to out-of-pocket business expenses, loss of minimum wage compensation, loss of overtime wages, compensation for missed meal and rest periods, and waiting time penalties.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Counter-Defendant has profited from its unlawful, unfair, and/or fraudulent acts and practices in the amount of those business expenses, improper deductions from compensation, unpaid overtime, minimum wage, meal and rest period compensation, and interest accrued by Counterclaimant.

112.    Counterclaimant is entitled to restitution pursuant to Cal. Business & Professions Code §§ 17203 and 17208 for all unpaid business expenses, overtime, minimum wage and meal and rest period compensation, and interest since four years prior to the filing of this action.

113.    Counterclaimant is entitled to enforce all applicable penalty provisions of the Cal. Labor Code pursuant to Cal. Business & Professions Code § 17202.

114.    By all of the foregoing alleged conduct, Counter-Defendant has committed ongoing unlawful, unfair and fraudulent business practices within the meaning of Cal. Business & Professions Code § 17200 et seq.

115.    As a direct and proximate result of the unfair business practices described above, Counterclaimant has suffered significant losses and Counter-Defendant has been unjustly enriched.

116.    Pursuant to Cal. Business & Prof. Code § 17203, Counterclaimant is entitled to: (a) restitution of money acquired by Counter-Defendant by means of its unfair business practices, in amounts not yet ascertained but to be ascertained at trial; (b) a declaration that Counter-Defendant's business practices are unfair within the meaning of the statute.

117.    Counterclaimant has assumed the responsibility of enforcement of the laws and lawful claims specified herein. There is a financial burden incurred in pursuing this action which is in the public interest. Therefore, reasonable attorneys' fees are appropriate pursuant to Cal. Code of Civil Procedure § 1021.5.

118.    Counterclaimant requests relief as described below.

### REQUEST FOR JURY TRIAL

119.    Defendant and Counterclaimant Paul Croghan requests a trial by jury.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1

**PRAYER FOR JUDGMENT**

2      WHEREFORE, Defendant and Counterclaimant Paul Croghan ("Croghan")

3  prays for judgment as follows:

4      A.    That Plaintiff and Counter-Defendant Snap! Mobile, Inc. ("Snap")

5            taking nothing by the Complaint;

6      B.    Dismiss Snap's Complaint in its entirety with prejudice;

7      C.    Enter judgment in favor of Croghan and against Snap;

8      D.    A declaratory judgment that Snap has knowingly and intentionally

9  violated the following provisions of law:

10           1.    Cal. Labor Code § 2802 by failing to indemnify Croghan for all

11                 necessarily incurred business expenses and losses;

12           2.    Cal. Labor Code §§ 226.7 and 512, and IWC wage order No. 4

13                 by failure to provide off-duty meal and periods to Croghan;

14           3.    Cal. Labor Code §§ 1182.11, 1182.11 and 1197, IWC wage

15                 order No. 4, and the Minimum Wage Order, by failure to pay at

16                 least minimum wage for all hours worked by Croghan;

17           4.    Cal. Labor Code §§ 510, 1194 et seq. and IWC wage order No. 4

18                 by failure to pay overtime compensation to Croghan;

19           5.    Cal. Labor Code § 226 and IWC wage order No. 4, § 7(B), by

20                 failing to provide Croghan with itemized statements of total

21                 hours worked with each payment of wages;

22           6.    Cal. Labor Code § 1174 and IWC wage order No. 4, § 7(A), by

23                 failing to maintain payroll records of the actual hours worked

24                 each day by Croghan;

25           7.    Cal. Labor Code §§ 201-203, for willful failure to pay overtime,

26                 minimum wage, and meal and rest period compensation at the

27                 time of termination of employment, resulting in unpaid waiting

28                 time penalties;

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

8.    29 U.S.C. § 2601, Cal. Govt. Code § 12945.2 and 2 Cal. Code Regs § 11035 by failing to provide Croghan with family and medical leave;

9.    Cal. Business and Professions Code §§ 17200-17208, by failing to reimburse Croghan for necessarily incurred business expenses, by failing to provide off-duty meal and rest periods and/or pay meal and rest period compensation to Croghan, by failing to pay at least minimum wage for all hours worked, by failing to pay Croghan overtime compensation, by failing to provide Croghan with itemized wage statements showing all hours worked, by failing to maintain payroll records that document all hours worked by Croghan, and by willfully failing to pay all compensation owed to Croghan upon termination of employment;

E.    A declaratory judgment that Snap's violations as described above were willful;

F.    An award to Croghan of damages in the amount of necessarily incurred business expenses, unpaid overtime, minimum wage compensation (plus liquated damages), and meal and rest period compensation, including interest thereon, subject to proof at trial;

G.    An award to Croghan of statutory penalties because of Counter-Defendant's failure to provide Croghan with itemized wage statements that comply with the requirements of Cal. Labor Code § 226, subject to proof at trial;

H.    An award of payments due to Croghan as waiting time penalties, pursuant to Labor Code § 203;

I.    An order requiring Snap to pay restitution of all amounts owed to Croghan for Snap's failure to pay legally required overtime, minimum wage, and meal and rest period pay, and interest thereon and Snap's failure to repay amounts

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

016297.00010
21646403.1

1 unlawfully deducted, and interest thereon, in an amount according to proof, pursuant

2 to Business & Professions Code § 17203;

3      J.     Compensatory and general damages in an amount according to proof;

4      K.     Punitive damages pursuant to Cal. Civ. Code § 3294;

5      L.     An award to Croghan of reasonable attorneys' fees and costs, pursuant

6 to Cal. Code of Civil Procedure § 1021.5, Cal. Labor Code §§ 218.5, 226, 1194,

7 1194.2 and 2802, 29 U.S.C. § 2617, 29 C.F.R. § 825.400, Cal. Govt. Code § 12965

8 and/or other applicable law;

9      M.     An award to Croghan of liquidated damages pursuant to Cal. Labor

10 Code § 1194.2, 29 U.S.C. § 2617, 29 C.F.R. § 825.400, Cal. Govt. Code § 12965

11 and/or other applicable law;

12      N.     An award to Croghan of interest pursuant to 29 U.S.C. § 2617, 29

13 C.F.R. § 825.400, Cal. Govt. Code § 12965 and/or other applicable law; and

14      O.     An award to Croghan of such other and further relief as this Court

15 deems just and proper.

16

17 Dated: October 12, 2018     ATKINSON, ANDELSON, LOYA, RUUD & ROMO

18

19 By: _____

20      Scott K. Dauscher
     Brian M. Wheeler

21      Amber S. Healy
     Shawn M. Ogle

22      Attorneys for Defendant and Counter-Claimant
     PAUL CROGHAN

23

24

25

26

27

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

FIRST AMENDED ANSWER TO COMPLAINT; COUNTERCLAIM; AND DEMAND
FOR JURY TRIAL

016297.00010
21646403.1