UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

<table>
<tr><td>SNAP! MOBILE, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>PAUL CROGHAN,<br><br>    Defendant.</td><td>Case No. 18-CV-04686-LHK<br><br>**ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: Dkt. No. 59</td></tr>
</table>

Before the Court is Plaintiff and Counterdefendant Snap! Mobile, Inc.'s ("Snap") motion to dismiss the counterclaims set forth in Defendant and Counterclaimant Paul Croghan's ("Croghan") Second Amended Answer and Counterclaim ("Second Motion to Dismiss"). ECF No. 59 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART with prejudice AND DENIES IN PART Snap's Second Motion to Dismiss.

I.  **BACKGROUND**

  **A. Factual Background**

  Snap is a Delaware corporation with its principal place of business in Seattle, Washington.

ECF No. 1 ("Compl.") ¶ 1. Snap developed an online donation platform to assist sports teams, coaches, and teachers to raise money through online donation campaigns. *Id.* ¶ 7. Snap makes its online donation platform available to teams, coaches, and teachers through its employees, including Snap's sales representatives. *Id.* ¶ 12.

Snap's complaint focuses on Snap's relationship with Croghan, a Santa Cruz, California resident who worked for Snap as an independent contractor starting in May 2014, and as an employee starting in July 2017, when Croghan signed a Sales Representative Agreement. *Id.* ¶¶ 2, 14–16. In the Sales Representative Agreement, Croghan promised not to use, disclose, or otherwise misappropriate Snap's confidential, proprietary, or trade secret information. *Id.* ¶ 32. According to Snap, Croghan quit suddenly on June 1, 2018, and commenced a relationship with a Snap competitor that is attempting, with Croghan's assistance, to copy Snap's fundraising tools and approaches and to misappropriate Snap's trade secret information. *Id.* ¶¶ 30–57.

Croghan's allegations in the Second Amended Answer and Counterclaim focus on the alleged conduct of Snap in its capacity as Croghan's employer. For instance, Croghan alleges that Snap misclassified Croghan as an independent contractor and then unilaterally changed Croghan's status from an independent contractor to an employee on July 18, 2017. ECF No. 50 ("SAA") at 3, 30. Croghan further alleges that despite his change to employee status in 2017, Croghan continued to perform the same job duties he had performed as an independent contractor. *Id.* at 30. Croghan alleges that Snap exercised control over Croghan at all times, including during his tenure as an independent contractor. *Id.* at 28–29. Croghan alleges that he paid all of his own business expenses, was not provided compliant meal or rest periods, and was not paid minimum wages for all hours worked or overtime. *Id.* at 30–33. Croghan also alleges that Snap failed to record Croghan's hours worked, failed to provide him accurate wage statements, failed to maintain accurate payroll records, and failed to pay Croghan all compensation due at termination. *Id.*

### B. Procedural History

After Croghan ended his employment with Snap on June 1, 2018, Snap initiated the instant

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS

action against Croghan on August 3, 2018. *See* Compl. Snap brought five claims against Croghan: (1) trade secret misappropriation pursuant to the Defend Trade Secrets Act ("DTSA"); (2) trade secret misappropriation pursuant to the California Uniform Trade Secrets Act ("CUTSA"); (3) Breach of Contract; (4) Breach of Duty of Loyalty; and (5) violation of California Penal Code § 502. Compl. ¶¶ 58–98. Croghan filed his Answer and Counterclaim on August 28, 2018. ECF No. 15.

On October 2, 2018, after meeting and conferring, the parties filed a stipulation for Croghan to amend his Answer and Counterclaim by October 12, 2018, ECF No. 25, which the Court granted, ECF No. 26. On October 12, 2018, Croghan filed his First Amended Answer and Counterclaim. ECF No. 27 ("FAA"). In his First Amended Answer and Counterclaim, Croghan asserted sixteen affirmative defenses and ten counterclaims. Croghan's ten counterclaims were: (1) violation of California Labor Code § 2802 ("Unreimbursed Business Expenses"); (2) violation of California Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 ("Missed Meal Period"); (3) violation of California Labor Code §§ 226.7, and IWC Wage Order No. 4 ("Missed Rest Period"); (4) violation of California Labor Code §§ 1182.11, 1182.12, and 1197, and IWC Wage Order No. 4 ("Failure to Pay Minimum Wage"); (5) violation of California Labor Code § 510, and IWC Wage Order No. 4 ("Failure to Pay Overtime"); (6) violation of California Labor Code § 226, and IWC Wage Order No. 4 ("Employee Itemized Wage Statement"); (7) violation of California Labor Code § 1174, and IWC Wage Order No. 4 ("Payroll Records"); (8) violation of California Labor Code §§ 201–02 ("Compensation Upon Termination"); (9) violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the California Family Rights Act ("CFRA"), California Government Code § 12945.2; and (10) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq. Id.* at 32–40.

On October 29, 2018, Snap filed a motion to strike the affirmative defenses and to dismiss eight of the ten counterclaims set forth in Croghan's First Amended Answer ("First Motion to Dismiss"). *See* Mot. at 32. Croghan opposed on November 13, 2018. ECF No. 34. Snap replied on

November 20, 2018. ECF No. 39.

On February 22, 2019, the Court granted in part with prejudice, granted in part without prejudice, and denied in part Snap's motion to strike, and granted without prejudice Snap's motion to dismiss Croghan's First Amended Answer and Counterclaim. ECF No. 45 ("February 22, 2019 Order"). In particular, the Court granted Croghan leave to amend by March 24, 2019, certain affirmative defenses as well as the eight counterclaims that Snap had moved to dismiss, including: the Unreimbursed Business Expenses counterclaim; the Missed Meal Period counterclaim; the Missed Rest Period counterclaim; the Failure to Pay Minimum Wage counterclaim; the Failure to Pay Overtime counterclaim; the Compensation Upon Termination counterclaim; the FMLA and CFRA counterclaim; and the UCL counterclaim. *Id.* The Court warned Croghan that if he failed to cure the deficiencies identified in the February 22, 2019 Order, the deficient counterclaims would be dismissed with prejudice. *Id.* at 31–21.

On March 22, 2019, in response to the Court's order dismissing certain affirmative defenses and counterclaims in the First Amended Answer and Counterclaim with leave to amend, Croghan filed his Second Amended Answer and Counterclaim. *See* SAA. In his Second Amended Answer and Counterclaim, Croghan asserted fifteen affirmative defenses and nine counterclaims. Croghan's nine counterclaims include: (1) Unreimbursed Business Expenses; (2) Missed Meal Period; (3) Missed Rest Period; (4) Failure to Pay Minimum Wage; (5) Failure to Pay Overtime; (6) Employee Itemized Wage Statement; (7) Payroll Records; (8) Compensation Upon Termination; and (9) UCL. *Id.* The only counterclaim Croghan did not reassert was his FMLA and CFRA counterclaim.

On March 25, 2019, Croghan filed a motion for leave to file a Third Amended Answer and Counterclaim. *See* ECF No. 51. On April 8, 2019, Snap filed its opposition to the motion for leave to file a Third Amended Answer and Counterclaim. ECF No. 58. On April 15, 2019, Croghan filed his reply. ECF No. 60. On August 1, 2019, the Court denied Croghan's motion for leave to file a Third Amended Answer and Counterclaim. ECF No. 75.

4

In the meantime, on April 12, 2019, Snap filed the instant motion to dismiss Croghan's Second Amended Answer and Counterclaim. *See* Mot. Croghan opposed on April 26, 2019. ECF No. 61 ("Opp'n"). Snap replied on May 3, 2019. ECF No. 62 ("Reply").

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint. *See, e.g.*, *Boon Rawd Trading Inter'l v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 947 (N.D. Cal. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183

(9th Cir. 2004).

**B. Leave Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). However, a court may in its discretion "deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

Snap again moves to dismiss Croghan's "Unreimbursed Business Expenses" counterclaim (first counterclaim); "Missed Meal Period" counterclaim (second counterclaim); "Missed Rest Period" Counterclaim (third counterclaim); "Failure to Pay Minimum Wage" counterclaim (fourth counterclaim); "Failure to Pay Overtime" counterclaim (fifth counterclaim); "Compensation Upon Termination" counterclaim (eighth counterclaim); and "UCL" counterclaim (ninth counterclaim). Snap also argues for the first time that the Court should decline to exercise supplemental jurisdiction over Croghan's counterclaims. The Court addresses each of Snap's arguments below.

**A. Counterclaim #1: Unreimbursed Business Expenses**

Snap again moves to dismiss Croghan's first counterclaim, the Unreimbursed Business Expenses counterclaim. Croghan's Unreimbursed Business Expenses counterclaim asserts a right to recover for Snap's violations of California Labor Code § 2802, which provides that Snap was required to reimburse Croghan's business related expenses during Croghan's employment with Snap. *See* SAA ¶¶ 53–57. Specifically, California Labor Code § 2802 provides:

> An employer shall indemnify his or her employee for all necessary expenditures or
> losses incurred by the employee in direct consequence of the discharge of his or her

6

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS

duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802.

In the First Motion to Dismiss, Snap argued that Croghan's Unreimbursed Business Expenses counterclaim was insufficient because Croghan did not allege that Snap knew or should have known that Croghan incurred the business expenses. *See* February 22, 2019 Order at 22–23. In the February 22, 2019 Order, the Court agreed that Croghan failed to allege that "Snap knew or should have known that Croghan incurred the business expenses." *See id.*; *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009) ("[F]or purposes of § 2802, before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense."). In the February 22, 2019 Order, the Court acknowledged that Croghan's opposition asserted Snap had knowledge because "Snap knew Croghan was working from home, Snap knew that Croghan used a cell phone for business purposes and was required to do so[,] and Snap knew it did not reimburse Croghan" and that "Snap also knew that sales incentives, such as pizza parties for sports teams Snap was fundraising for, were being paid by Croghan but they did not reimburse him for these sales incentives." February 22, 2019 Order at 23 (citing ECF No. 34). Nonetheless, in the February 22, 2019 Order, the Court found that "Croghan's factual assertions in response appear only in the opposition and not in the [First Amended Answer and Counterclaim], and therefore these assertions do not save the deficiencies in the [First Amended Answer and Counterclaim]." *Id.* Thus, the Court granted Snap's motion to dismiss the Unreimbursed Business Expenses counterclaim but granted Croghan leave to amend.

In the Second Amended Answer and Counterclaim, Croghan cured this deficiency by pleading facts that Snap knew or should have known that Croghan incurred business expenses that were required to be reimbursed. *See* SAA ¶ 54 ("Counter-Defendant was aware that Counterclaimant worked from home, that Counterclaimant used a cell phone for business purposes, as was required by Counter-Defendant, and that Counterclaimant would pay for pizza parties for sports teams that Counter-Defendant was fundraising for.").

In the instant motion to dismiss the Second Amended Answer and Counterclaim, Snap now argues that Croghan's Unreimbursed Business Expenses counterclaim fails because it is premised on Snap's misclassification of Croghan as an independent contractor. Specifically, Snap argues that Croghan failed to adequately allege that Croghan was an employee during the period in which Croghan was misclassified as an independent contractor and that Croghan's failure to so allege means that Croghan cannot assert his Unreimbursed Business Expenses counterclaim. Mot. at 7–14. In support of this argument, Snap argues that the test in *S.G. Borello & Sons v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989) ("*Borello*"), governs whether Croghan was an employee during the period in which he was misclassified as an independent contractor, and that Croghan has not alleged sufficient facts to support that Croghan was an employee under the *Borello* test. *Id.* In opposition, Croghan argues first that Snap's argument is untimely because Snap did not raise this argument in the First Motion to Dismiss. Opp'n at 6. Second, Croghan argues that his Unreimbursed Business Expenses counterclaim is not limited solely to the period in which Croghan was misclassified as an independent contractor. *Id.* at 6–7. Third, Croghan argues that the test in *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018) ("*Dynamex*"), and not the *Borello* test applies to the question of whether Croghan was an employee during the period in which he was misclassified as an independent contractor. However, Croghan argues that to the extent *Borello* applies, Croghan sufficiently alleges that Croghan was an employee during the period in which he was misclassified as an independent contractor. The Court discusses each of the parties' disagreements in turn.

### 1. Timeliness

First the Court notes that Croghan is correct that Snap did not assert this argument in Snap's First Motion to Dismiss. Federal Rule of Civil Procedure 12(g)(2) governs whether or not Snap's argument in the instant motion is nonetheless timely. *See In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) ("Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS

defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6), but the defense may be asserted in other ways."); *see also, e.g., Harrell v. City of Gilroy*, No. 17-CV-05204-LHK, 2019 WL 452039, at *9 (N.D. Cal. Feb. 5, 2019) (denying new arguments in a second motion to dismiss after finding the new arguments barred by Rule 12(g)(2)). Nonetheless, the Court need not determine whether Snap is permitted to raise this new argument under Rule 12(g)(2) because, even considering Snap's new argument, the Court denies Snap's motion to dismiss Croghan's Unreimbursed Business Expenses counterclaim.

### 2. Croghan's Unreimbursed Business Expenses Counterclaim is Limited to the Time Period in Which Croghan was Misclassified as an Independent Contractor

As discussed, Croghan asserts that his Unreimbursed Business Expenses counterclaim is not limited solely to the time period in which Croghan was misclassified as an independent contractor, and therefore Snap's motion to dismiss on this ground fails. Opp'n at 7–8. The Court rejects Croghan's attempt to now reframe the time period of his Unreimbursed Business Expenses counterclaim. Croghan's allegations specifically state "[a]s a result of Counter-Defendant's misclassifying Counterclaimant as an independent contractor, Counter-Defendant unlawfully failed to indemnify Counterclaimant for necessary employment-related expenses, including, among things, printing costs, sales incentive costs" as well as "travel costs, mileage and auto expenses, computer equipment, utilities, and cellular telephone expenses, all of which were required by Counter-Defendant." SAA ¶ 38. Further, Croghan specifically alleges that "[b]y misclassifying Counterclaimant as an independent contractor, and further by requiring Counterclaimant to pay expenses and cover losses that Counterclaimant incurred in direct consequence of the discharge of Counterclaimant's duties for Counter-Defendant and/or in obedience to Counter-Defendant's direction, Counter-Defendant has violated Cal. Labor Code § 2802." *Id.* ¶ 55. Thus, Croghan's allegations specifically limit the time period of his Unreimbursed Business Expenses counterclaim to the time period in which Croghan was misclassified as an independent contractor.

Moreover, Croghan has already effectively conceded that his counterclaims are primarily

9

based on Snap's labor practices during the period in which Croghan was misclassified as an independent contractor. Indeed, in his reply brief in support of his motion for leave to file a Third Amended Answer and Counterclaim, Croghan offered to strike allegations about Snap's labor practices from Croghan's wage and hour counterclaims that were limited to the time period in which Croghan was misclassified as an independent contractor so that his claims would not be so limited. *See* ECF No. 60 at 11–12.

Accordingly, the Court finds that Croghan's Unreimbursed Business Expenses counterclaim is based on Snap's labor practices that occurred during the period in which Croghan was misclassified as an independent contractor.

### 3. The *Borello* and the *Dynamex* Employment Relationship Tests

Next, the parties dispute which employment relationship test—*Borello* or *Dynamex*—governs the determination of whether Croghan should be deemed an employee during the period in which Croghan was misclassified as an independent contractor. *See* Mot. at 7–8; Opp'n at 8–9.

Snap argues that the *Borello* test governs the instant dispute. Under *Borello*, to determine if a worker is an employee, the relevant inquiry is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." 48 Cal. 3d at 350 (brackets, internal quotation marks, citations omitted). "Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'" *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (citations omitted). If the "person to whom service is rendered" has "the right to control," that is indicative that the worker is an employee. *Borello*, 48 Cal. 3d at 350. In addition, *Borello* recognizes, aside from the right to control, a list of "secondary indicia" that inform the task of classifying workers as either an employee or an independent contractor. Drawn from the Restatement of Second of Agency, these secondary indicia include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the

10

work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Borello*, 48 Cal. 3d at 351 (citation omitted). Courts consider these factors to determine whether the worker is an employee or an independent contractor. *See, e.g.*, *Gonzalez v. Workers' Comp. Appeals Bd.*, 46 Cal. App. 4th 1584, 1590 (1996) (discussing secondary indicia factors to determine whether worker was an employee or an independent contractor).

By contrast, Croghan argues that the *Dynamex* test governs the instant dispute. Under *Dynamex*, Croghan is presumed to be an employee. 4 Cal. 5th at 955. Further, *Dynamex* permits Croghan to be classified as an independent contractor only if Snap demonstrates that Croghan "satisfies *each* of three conditions: (a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (b) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (c) that the worker is customarily engaged in an independently established trade, occupation or business of the same nature as that involved in the work performed." *Id.* at 955–56 (emphasis in original).

The Court need not resolve the parties' dispute as to which test applies because, even under the *Borello* test, the Court finds that Croghan's allegations are sufficient to support a finding that Croghan was an employee during the period in which Croghan was misclassified as independent contractor.

### 4. Croghan's Allegations are Sufficient Under the *Borello* Test

Under *Borello*, to determine if a worker is an employee, the relevant inquiry is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." 48 Cal. 3d at 350 (brackets, internal quotation marks, citations omitted). If the "person to whom service is rendered" has "the right to control," that is indicative

11

that the worker is an employee. *Borello*, 48 Cal. 3d at 350. In addition, *Borello* recognizes, aside from the right to control, a list of "secondary indicia" that inform the task of classifying a worker as either an employee or an independent contractor.

For the reasons given below, the Court finds that Croghan's Second Amended Answer and Counterclaim sufficiently alleges that Croghan was an employee during the period in which Croghan was misclassified as an independent contractor because Croghan alleges that Snap had "the right to control the manner and means of accomplishing the result desired," *Borello*, 48 Cal. 3d at 350, and because Croghan has alleged other secondary indicia suggesting he was an employee. The Court discusses each in turn.

### a. Right to Control the Manner and Means

First, Croghan sufficiently alleges that Snap retained the "right to control the manner and means" of Croghan's work during the period in which Croghan was misclassified as an independent contractor such that Croghan was in fact an employee of Snap under California law. *Borello*, 48 Cal. 3d at 350. The Court first discuses relevant case law before evaluating Snap's allegations.

In *Ruiz v. Affinity Logistics Corp.*, for instance, the Ninth Circuit found that plaintiff truck drivers were employees of defendant trucking company. 754 F.3d 1093, 1101 (9th Cir. 2014). Relevant here, the Ninth Circuit found that the defendant trucking company had the right to control the plaintiff truck drivers' work because, inter alia, the defendant trucking company controlled the drivers' rates, schedules, and routes; controlled the equipment; monitored the progress of each driver; required the drivers to report to the warehouse and attend "stand-up" meetings; and required the drivers to call the defendant truck company during their driving routes. *Id.* at 1101–03. In *Alexander v. FedEx Ground Package Sys., Inc.*, the Ninth Circuit found that plaintiff FedEx drivers were employees for similar reasons as in *Ruiz*. 765 F.3d 981, 984 (9th Cir. 2014). The Ninth Circuit in *Alexander* further noted, among other things, that defendant had structured the drivers schedules so that the drivers worked 9.5 to 11 hours each day. *Id.* at 990.

United States District Court
Northern District of California

In *Villalpando v. Exel Direct Inc.*, the United States District Court for the Northern District of California found that delivery driver plaintiffs were employees because the facts established that defendant had the right to control plaintiffs. No. 12-CV-04137-JCS, 2015 WL 5179486, at *45 (N.D. Cal. Sept. 3, 2015). The *Villalpando* court emphasized that defendant engaged in extensive training of plaintiffs, subjected plaintiffs to oversight, and expected plaintiffs to follow specific guidelines as to how they perform their jobs; that defendant required plaintiffs to attend "stand-up meetings"; and that defendant exercised control over the plaintiff drivers' schedules, including by hiring drivers who could work full-time and by typically requiring its drivers to work five to six days a week, between 10 and 12 hours a day. *Id.*

In *Hurst v. Buczek Enterprises, LLC*, the United States District Court for the Northern District of California found that plaintiff, who was a landscape contractor and handyman, had set forth sufficient facts to survive summary judgment on the question of whether he was an employee instead of an independent contractor when plaintiff had set forth evidence that he, inter alia, worked exclusively for defendant during the relevant time period and that defendant sent work orders daily directing plaintiff what to do. 870 F. Supp. 2d 810, 825 (N.D. Cal. 2012). The *Hurst* court also stated, "between the detailed work orders, training sessions, instructional memoranda, conference calls, and substantial photo documentation requirement, a jury could reasonably conclude that [defendant] exercised control over both 'the manner and means of accomplishing the result desired.'" *Id.*

In *Guifu Li v. A Perfect Day Franchise, Inc.*, this Court found that massage therapist plaintiffs had sufficiently alleged that the defendants misclassified the plaintiffs as independent contractors when the plaintiffs were in fact employees who performed services controlled by defendants as required by *Borello*. No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *7 (N.D. Cal. June 15, 2012). This Court found sufficient the plaintiffs' allegations that "Plaintiffs' perform services within Defendants' usual course of business and do not work in an independently established trade, occupation, profession, or business"; that "Defendants instruct Plaintiffs how to

do their work, regulate their hours, determine and control the terms, conditions, and amounts paid for Plaintiffs' services"; that "Defendants disciplined Plaintiffs and dictated the performance and details of their jobs"; that "Defendants also provide the necessary instrumentalities for work"; and that "Defendants exercise control over the hours, wages and all working conditions of class members, [and] set the price, schedule and terms of the services class members provide to clients." *Id.*

Here, like in *Ruiz*, *Alexander*, *Villalpando*, *Hurst*, and *Guifu Li*, Croghan sufficiently alleges facts that Snap retained the right to control the manner and means of Croghan's work. For example, Croghan alleges that Snap controlled Croghan's schedule, including by requiring Croghan to work full work weeks, attend trainings, and participate in calls and meetings. For instance, Croghan alleges that "Counter-Defendant unilaterally set schedules and timelines for work completed by Counterclaimant, stating Counterclaimant and other employees were expected to be at schools between the hours 7 or 8 a.m. to 3 p.m.," SAC ¶ 17; "Counterclaimant received work assignments from Counter-Defendant, including delivery of fundraising checks each week to clients that took approximately one hour and ten minutes per delivery from Counterclaimant's Croghan's home," *Id.* ¶ 11; "Counter-Defendant directed the manner in which Counterclaimant was to perform his work, providing Counterclaimant with detailed instructions, including but not limited to, mandated follow up with coaches that took on average five (5) to ten (10) hours per week and constant communication with Counterclaimant's account manager that took an average of thirty (30) minutes per day," *id.* ¶ 13; Counter-Defendant required Counterclaimant to participate in weekly sales calls," *id.* ¶ 19; "Counter-Defendant required Counterclaimant to participate in bi-annual unpaid training," *id.* ¶ 20; "Counter-Defendant required Counterclaimant to participate in weekly video training," *id.* ¶ 21.

Croghan also alleges that Snap set progress goals, subjected Croghan to oversight, and expected Croghan to follow specific guidelines as to how he performed his job. For instance, Croghan alleges "Counter-Defendant's instructions included, among other things, specific

United States District Court
Northern District of California

policies, techniques, and procedures to be used and/or followed by Counter-Defendant's sales representatives," *id.* ¶ 14; "Counter-Defendant unilaterally established monthly and quarterly sales goals for Counterclaimant," *id.* ¶ 22; and "Counter-Defendant closely monitored Counterclaimant's performance, including Counterclaimant's progress towards his sales goals," *id.* ¶ 23. Croghan also alleges that Snap set the rates charged to the schools: "Counter-Defendant unilaterally set the price charged to customers [for] Counterclaimant's services," *id.* ¶ 25. Croghan further alleges that he was required to use Snap's equipment: "Counter-Defendant required Counterclaimant to use its equipment, computer systems, and email system, and issued Counterclaimant an email address associated with Counter-Defendant," *id.* ¶ 18.

Finally, Croghan alleges that he was subject to discipline by Snap: "Counterclaimant was subject to discipline by Counter-Defendant if he refused a work assignment," *id.* ¶ 12; "Counterclaimant was subject to discipline by Counter-Defendant if he did not comply with Counter-Defendant's detailed instructions and requirements for the performance of his work," *id.* ¶ 15; "Counterclaimant was subject to discipline by Counter-Defendant in the event Counterclaimant failed to meet the performance standards set by Counter-Defendant," *id.* ¶ 24; and "When Counterclaimant did not follow Counter-Defendant's rules or instructions, he was subject to discipline," *id.* ¶ 26. *See Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 938 (N.D. Cal. 2017), *reconsideration denied*, 2018 WL 3753054 (N.D. Cal. Aug. 8, 2018) (noting that discipline constitutes evidence that the plaintiff is an employee rather than an independent contractor).

Thus, like in *Ruiz*, *Alexander*, *Villalpando*, *Hurst*, and *Guifu Li*, these allegations support a finding that Snap retained the "right to control the manner and means" of Croghan's work, which in turn, support a finding Croghan was an employee during the period in which Croghan was misclassified as an independent contractor. *Borello*, 48 Cal. 3d at 350.

Moreover, Croghan alleges that he "continued to perform the same job duties he ha[d] performed as an independent contractor" after Snap unilaterally changed Croghan's status to an

employee on July 18, 2017. SAA ¶¶ 33–34. Snap's change of Croghan's status with no accompanying change in Croghan's job duties serves as strong evidence that Croghan was misclassified because it speaks to Snap's ability to control Croghan. *See, e.g.*, *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 330 n.4 (2004) ("[D]efendant's interrogatory responses indicate that during the class period it reclassified all AM's from exempt to nonexempt with 'no change in the job description or job duties.' The court could rationally have regarded the reclassification as common evidence respecting both defendant's classification policies and the AM's actual status during the relevant period.").

In its instant motion to dismiss, Snap asserts that Croghan's allegations lack specificity regarding the nature of control Snap had over Croghan. For instance, Snap argues that Croghan does not say that Snap "told him what day to deliver checks; what time to deliver checks; in what order to deliver checks; [and] what to say when checks were delivered." Mot. at 9–10. Similarly, Snap argues that Croghan does not allege that Snap "told him which schools to visit, how to select schools to visit, or in which order to visit schools." *Id.* at 11. However, in asking for these details, Snap asks for information beyond what is required by *Borello*. Under *Borello*, "a business need not control the precise manner or details of the work in order to be found to have maintained the necessary control that an employer ordinarily possesses over its employees." *Dynamex*, 4 Cal. 5th at 958 (discussing *Borello*, 48 Cal. 3d at 353–54, 356–57). Moreover, *Borello* specifically provides: "[a] business entity may not avoid its statutory obligations by carving up its production process into minute steps, then asserting that it lacks 'control' over the exact means by which one such step is performed by the responsible workers." *Borello*, 48 Cal. 3d at 357. Thus, Snap's request for yet further details as to how Snap exercised control over Croghan is not required by *Borello*.

Snap also asserts that Croghan's allegations fail because Croghan did not expressly allege that Snap retained the right to discharge Croghan without cause. Mot. at 8 (citing *Ayala*, 59 Cal. 4th at 531). Snap is correct that *Ayala* stated that "[p]erhaps the strongest evidence of the right to

16

control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'" *Ayala*, 59 Cal. 4th at 531. However, *Ayala* does not require Croghan to allege the right to discharge without cause in order to sufficiently plead that he was an employee. This is because the right to discharge without cause is only "evidence," not an element, of the right to control. *See Ayala*, 59 Cal. 4th at 531. In any event, Croghan alleges in his affirmative defenses that Snap threatened to terminate him if Croghan refused to sign the July 18, 2017 employment agreement, which implies Snap had the right to discharge without cause and further implies the "means of controlling [Croghan's] activities." *See* SAA at 17, 21, 23–25. Even further, Croghan alleges that Snap retained the power to discipline Croghan if he failed to comply with Snap's instructions and requirements. *Id.* ¶¶ 12, 15, 24, 26. See *Bowerman*, 242 F. Supp. 3d at 938 (noting that discipline constitutes evidence that the plaintiff is an employee rather than an independent contractor). Thus, the Court rejects Snap's argument that Croghan's allegations fail because Croghan did not expressly allege that Snap retained the right to discharge Croghan without cause.

In sum, the Court finds that Croghan sufficiently alleges that Snap had "the right to control the manner and means of accomplishing the result desired." *Borello*, 48 Cal. 3d at 350.

### b. Secondary Indicia

The Court also finds that Croghan alleges sufficient secondary indicia that Croghan was an employee and not an independent contractor during the period in which Croghan was misclassified as an independent contractor. As previously discussed, the relevant secondary indicia factors include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

17

*Borello*, 48 Cal. 3d at 351 (citation omitted).

Here, Croghan alleges that the first secondary indicia factor, "whether the one performing services is engaged in a distinct occupation or business," is present in this case. "If a worker is engaged in a distinct occupation or business, then that would suggest that the worker is an independent contractor rather than an employee." *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1139 (N.D. Cal. 2009). Here, Croghan alleges that "Counterclaimant was not customarily engaged in a trade, occupation or business independently established from Counter-Defendants' business." SAA ¶ 29. Further, there are no allegations that while working as a sales representative for Snap, Croghan held himself out as having a separate occupation or business. The Court finds based on this that Croghan has sufficiently alleged that the first secondary indicia factor is present in this case. *See, e.g.*, *Harris*, 656 F. Supp. 2d at 1139 ("[T]here is no evidence that, while working as a Sales Rep and selling knives, Ms. Harris held herself out as a separate occupation or business."); *Antelope Valley Press v. Poizner*, 162 Cal. App. 4th 839, 854–55 (2008) (stating that "the evidence does not show that in making deliveries for AVP, the carriers are engaged in a distinct occupation or business of their own"; adding that "[t]here was no evidence that any of AVP's carriers hold themselves out as being an independent delivery service that happens to have AVP as one of its customers"); *Air Couriers Int'l v. Employment Development Dep't*, 150 Cal. App. 4th 923, 938 (2007) (noting that "the drivers were not engaged in a separate profession or operating an independent business").

Croghan alleges that the fourth secondary indicia factor, "whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work," is present in this case. "[I]f the worker is using his employer's tool or instrumentalities, especially if they are of substantial value . . . this indicates that the owner is a master." Restatement (Second) of Agency § 220 cmt. k. Here, because Croghan alleges that Snap required Croghan "to use its equipment, computer systems, and email system, and issued Counterclaimant an email address associated with Counter-Defendant," SAA ¶ 18, the Court finds that Croghan has sufficiently

alleged that the fourth secondary indicia factor is present in the case. *See, e.g.*, *Valadez v. CSX Intermodal Terminals, Inc.*, 298 F. Supp. 3d 1254, 1283 (N.D. Cal. 2018), *reconsideration denied*, 2019 WL 1975460 (N.D. Cal. Mar. 15, 2019) (finding fourth secondary indicia factor favored a finding that plaintiffs were employees when defendant provided some of the instrumentalities of the plaintiff's work).

Croghan also alleges that the seventh secondary indicia factor, "whether or not the work is a part of the regular business of the principal," is present in this case. Here, because Croghan alleges that "Counterclaimant provided services that were an integral part of Counter-Defendant's business enterprise" and that Snap makes its online donation platform available to teams, coaches, and teaches *through its sales representatives*, SAA ¶¶ 6–7, 27, the Court finds that Croghan has sufficiently alleged that the seventh secondary indicia factor is present in this case. *See, e.g.*, *Harris*, 656 F. Supp. 2d at 1139 (finding the seventh secondary indicia factor supported a finding that the plaintiff was an employee because "the work of the Sales Reps is clearly part of Vector's regular business and is an integral part of that business.").

Finally, Croghan alleges that the final secondary indicia factor, "whether or not the parties believe they are creating the relationship of employer-employee," is present in this case because Croghan alleges that Snap unilaterally changed Croghan's status from independent contractor to employee without any changes to Croghan's job duties. SAA ¶¶ 32–34. Specifically, Croghan argues that "Snap must have believed it had an employment relationship with Croghan, not an independent contractor relationship, which is why Snap unilaterally converted Croghan from an independent contractor to an employee." Opp'n at 14. The Court agrees that Croghan's allegation that Snap unilaterally changed Croghan's status to employee without any changes to Croghan's job duties supports a finding that Snap may have believed it had an employment relationship, and not an independent contractor relationship, with Croghan during the period in which Croghan was misclassified as an independent contractor. *See Borello*, 48 Cal. 3d at 351 (explaining that a finding that the parties believed they had an employer-employee relationship supports a finding of

an employment relationship). Thus, Croghan has sufficiently alleged that the final secondary indicia factor is present in this case.

In sum, the Court finds that Croghan's Second Amended Answer and Counterclaim sufficiently alleges that Croghan was an employee during the period in which Croghan was misclassified as an independent contractor because Croghan alleges that Snap retained "the right to control the manner and means of accomplishing the result desired," *Borello*, 48 Cal. 3d at 350, and because Croghan has sufficiently alleged other secondary indicia that Croghan was Snap's employee. Thus, the Court DENIES Snap's motion to dismiss Croghan's Unreimbursed Business Expenses counterclaim.

### B. Counterclaims #2 and #3: Missed Meal and Rest Periods

Snap again moves to dismiss Croghan's second and third counterclaims: the Missed Meal Period counterclaim and the Missed Rest Period counterclaim. Croghan's Missed Meal and Rest Period counterclaims assert a right to recover for violations of California Labor Code §§ 226.7 and 512. SAA ¶¶ 58–76. California law requires employers to provide meal periods and to authorize and permit their employees to take rest breaks. Specifically, California Labor Code § 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." California Labor Code § 226.7 provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." Cal. Lab. Code § 226.7.

In the February 22, 2019 Order, the Court found Croghan's Missed Meal and Rest Period counterclaims insufficient because Croghan's First Amended Answer and Counterclaim was "devoid of allegations that sufficiently allege that Snap knew or should have known what hours Croghan was working or when he was taking breaks." February 22, 2019 Order at 24–25 (citing *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051–52 (2012) (explaining that for rest periods "[l]iability is contingent on proof [the employer] knew or should have known off-the-clock work was occurring.")). Further, the Court found that "as currently alleged, Croghan's

United States District Court
Northern District of California

second and third counterclaims fail to specify how exactly Croghan was subject to the control of Snap." *Id.* The Court continued "[f]ailure to allege what Snap knew or should have known as well as how Croghan was subject to the control of Snap, particularly where the pleadings suggest that Croghan was a salesman who traveled by car for work off-site from Snap, renders Croghan's second and third counterclaims insufficient." *Id.* Thus, the Court granted Snap's motion to dismiss the Missed Meal and Rest Period counterclaims but granted Croghan leave to amend. *Id.* at 25.

In the instant motion to dismiss the Second Amended Answer and Counterclaim, Snap again argues that Croghan's Missed Meal and Rest Period counterclaims are insufficient for failing to allege that Snap knew or should have known when Croghan was taking breaks. Mot. at 14–15. In opposition, Croghan asserts that his allegations are sufficient. Opp'n at 14–15. The Court agrees with Snap.

Although Croghan has bolstered his allegations about Snap's control, Croghan has not addressed the other deficiencies the Court noted in the February 22, 2019 Order. That is, Croghan has not added allegations that "Snap knew or should have known what hours Croghan was working or *when [Croghan] was taking breaks*." February 22, 2019 Order at 24–25 (emphasis added).

For instance, Croghan's new allegations focus on the hours Snap required of him and include a detailed summary of the different tasks Snap required of Croghan, including that Snap required Croghan to deliver checks to schools each week, which typically took about 70 minutes; Snap required Croghan to follow-up with coaches, which took approximately 5 to 10 hours per week; Snap required Croghan to spend about 30 minutes a day in communication with an account manager; and Croghan spent approximately 8 to 11 hours per week inputting data on a computer. SAA ¶¶ 11–21. Nonetheless, these allegations do not describe a work schedule that would preclude Croghan from taking a 30-minute meal break every five hours. Even further, Croghan's Second Amended Answer is devoid of allegations that Snap knew or should have known when Croghan was taking breaks. Croghan's failure to allege that Snap knew or should have known

United States District Court
Northern District of California

when Croghan was taking breaks renders Croghan's Missed Meal and Rest Period counterclaims insufficient. *See Brinker Restaurant Corp.*, 53 Cal. 4th at 1051–52 (explaining that for rest periods "[l]iability is contingent on proof [the employer] knew or should have known off-the-clock work was occurring."); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 523 (E.D. Cal. 2014) ("[A]n employer is deemed to have suffered or permitted an employee to work if it knew or should have known that its employees were working off-the-clock." (citation and marks omitted)).

Moreover, Croghan cites *Ambriz v. Coca Cola Co.*, 2013 WL 5947010 (N.D. Cal. Nov. 5, 2013), which is inapposite. In *Ambriz*, United States District Judge Jon S. Tigar found that the plaintiffs had adequately pled a claim for failure to provide meal periods when the plaintiffs alleged that their employer scheduled them to work fixed shifts and that during those shifts, which exceeded five hours, the employer did not allow breaks. *See id.* at *3–4. By contrast here, Croghan does not allege that he was assigned and worked shifts in which he was unable to go off duty for a break. Instead, Croghan alleges that Snap directed Croghan to complete different tasks at different schools. But Croghan has not alleged a work schedule that precluded breaks. As such, Croghan's Missed Meal and Rest Period counterclaims are deficient. The Court therefore GRANTS Snaps' motion to dismiss Croghan's Missed Meal and Rest Period counterclaims.

The Court grants the motion to dismiss Croghan's Missed Meal and Rest Period counterclaims with prejudice. The February 22, 2019 Order specifically identified the deficiencies in Croghan's Missed Meal and Rest Period counterclaims and warned Croghan that failure to cure the deficiencies would result in dismissal of these counterclaims with prejudice. February 22, 2019 Order at 24–25, 31–32. Specifically, Croghan was on notice that he needed to allege that "Snap knew or should have known what hours Croghan was working or when [Croghan] was taking breaks." *Id.* at 24–25. Despite this warning, Croghan failed to file a Second Amended Answer and Counterclaim with amendments to cure the identified deficiencies. Therefore, the Court finds that further leave to amend would be futile. Furthermore, additional leave to amend would be unduly prejudicial to Snap as the instant motion to dismiss concerns Croghan's third attempt at an answer

22

and counterclaims, and because Snap has already had to brief two motions to dismiss as well as a motion for leave to amend. Because further amendment would be futile and unduly prejudicial to Snap, Croghan's Missed Meal and Rest Period counterclaims are dismissed with prejudice. *See Leadsinger, Inc.*, 512 F.3d at 532.

### C. Counterclaims #4 and #5: Failure to Pay Minimum Wage and Overtime

Snap again moves to dismiss Croghan's fourth and fifth counterclaims: the Failure to Pay Minimum Wage counterclaim and the Failure to Pay Overtime counterclaim. Croghan's fourth counterclaim for Failure to Pay Minimum Wage counterclaim asserts that there were hours when Croghan worked and was not paid in violation of California Labor Code §§ 1182.11, 1182.12, and 1197. SAA ¶¶ 68–74. Croghan's fifth counterclaim for Failure to Pay Overtime counterclaim asserts that Snap failed to pay overtime in violation of California Labor Code § 510. *Id.* ¶¶ 75–81.

In the February 22, 2019 Order, the Court treated Croghan's fourth counterclaim and fifth counterclaim together because in the First Amended Answer and Counterclaim, the fourth counterclaim relied entirely on Croghan's allegations of overtime work (from the fifth counterclaim). February 22, 2019 Order at 25–26.

In the instant Second Amended Answer and Counterclaim, Croghan against reasserts an overtime theory in support of his fourth counterclaim. However, Croghan also adds a second theory regarding unpaid bi-annual training. The Court refers to the fourth counterclaim to the extent it concerns the overtime theory as the "fourth counterclaim based on overtime." The Court refers to the fourth counterclaim to the extent it concerns the unpaid bi-annual training theory as the "fourth counterclaim based on unpaid bi-annual training."

Below, in Section III.C.1., the Court again considers the fourth counterclaim based on overtime and the fifth counterclaim together. In Section III.C.2., the Court considers the new theory in the fourth counterclaim based on unpaid bi-annual training.

### 1. The Fourth Counterclaim Based on Overtime and the Fifth Counterclaim

In the February 22, 2019 Order, the Court found Croghan's fourth counterclaim based on

United States District Court
Northern District of California

overtime and the fifth counterclaim insufficient. February 22, 2019 Order at 25–26. Specifically, the Court explained that both parties cited to *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014). In that case, the employee-plaintiffs alleged that:

> [T]he named plaintiff ... [was] entitled to a minimum wage and an overtime hourly wage of time and one-half [his] regular hourly wage for all hours worked in excess of forty hours per week, the named plaintiff ... worked more than 40 hours per week for the defendants, and the defendants willfully failed to make said overtime and/or minimum wage payments.

771 F.3d at 646. The Ninth Circuit found this insufficient to allege minimum wage and overtime claims. *Id.* The Ninth Circuit explained that "[a]lthough plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating that there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* The Ninth Circuit explained that the *Landers* plaintiff's "allegations failed to provide 'sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week.'" *Id.* (citing *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir. 2013)).

In the February 22, 2019 Order, the Court found that Croghan's fourth counterclaim based on overtime and the fifth counterclaim "suffer[ed] from the same deficiencies that the Ninth Circuit discussed in *Landers* in that Croghan's allegations do not allege facts demonstrating that there was at least one workweek in which Croghan worked in excess of forty hours and was not paid overtime wages." February 22, 2019 Order at 26. Therefore, the Court granted Snap's motion to dismiss Croghan's fourth counterclaim based on overtime and the fifth counterclaim but granted Croghan leave to amend. *Id.*

In the instant motion to dismiss the Second Amended Answer and Counterclaim, Snap again argues that Croghan's fourth counterclaim based on overtime[1] and the fifth counterclaim are

---

[1] Snap acknowledges that Croghan's fourth counterclaim in the Second Amended Answer and Counterclaim is now supported by a second theory: unpaid bi-annual training. This second theory

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS

insufficient for failing to allege that Croghan worked more than forty hours in a week. Mot. at 16–18. In opposition, Croghan asserts that his allegations are sufficient "because Croghan's allegations demonstrate there was at least one workweek in which Croghan worked in excess of forty hours and was not paid overtime wages." Opp'n at 15–16 (citing *Landers*, 771 F.3d at 646). The Court agrees with Snap that Croghan's new allegations are insufficient as to his fourth counterclaim based on overtime and fifth counterclaim.

Croghan again fails to allege that Croghan "worked more than forty hours in a given week." *Landers*, 771 F.3d at 646. Specifically, Croghan asserts in his opposition to the instant motion to dismiss that Croghan was required to perform certain tasks every week that total between 59 and 71 hours a week. Opp'n at 16. However, Croghan's allegation that he was required to perform weekly tasks that total 59 to 71 hours appear only in the opposition and not in the Second Amended Answer and Counterclaim, and therefore this allegation does not cure the deficiencies in the Second Amended Answer and Counterclaim. *See, e.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original) (citation omitted)).

Instead, the Second Amended Answer and Counterclaim only alleges a series of tasks Croghan was required to do, including: (1) delivering fundraising checks each week that took approximately 1 hour and 10 minutes per delivery; (2) following up with coaches for 5 to 10 hours per week; (3) communicating with the account manager, which took approximately 30 minutes per day, or 2.5 hours per week (if the allegation is in fact that these calls occurred 5 days a week); (4) inputting data in Snap's computer systems for 8 to 11 hours per week; and (5) participating in weekly sales calls for 75 minutes, (or 1 hour and 15 minutes). SAA ¶¶ 11–21. These tasks add up

---

does not require Croghan to allege that there was at least one work week in which Croghan worked in excess of forty hours, because that requirement only applies to Croghan's fourth counterclaim theory that he was not paid overtime wages. *See Landers*, 771 F.3d at 646. The Court discusses this second unpaid bi-annual training theory that supports the fourth counterclaim (the fourth counterclaim based unpaid bi-annual training) in Section III.C.2.

United States District Court
Northern District of California

to a total range of between 17 hours and 55 minutes a week to 25 hours and 55 minutes a week, both of which are well below the necessary 40 hours in a week.

In his opposition to the instant motion, Croghan insists on adding to the above calculations the time Croghan spent working at home and the time he spent working at school. Specifically, Croghan cites to his allegation that: "Counterclaimant and other employees would go to schools on a daily basis from 3 to 6:30 p.m. and work from home from 7 or 8 a.m. to 2 p.m. Counterclaimant and other employees were encouraged to work from home on Fridays." SAA ¶ 17. In his opposition to the instant motion, Croghan asserts that the Court should count this allegation as an additional 14 hours for "[v]isiting schools at least four times per week" and as an additional 27.5 to 31.5 hours for time "[w]orking from home." Opp'n at 16. Croghan asserts that the Court should thus add 14 hours and 27.5 to 31.5 hours for purposes of calculating whether Croghan worked more than 40 hours in one week. *Id.* However, Croghan's allegations that he spent 14 hours per week at schools and 27.5 to 31.5 hours per week at home appear only in the opposition and not in the Second Amended Answer and Counterclaim, and therefore these assertions do not save the deficiencies in the Second Amended Answer and Counterclaim. *See, e.g.*, *Broam*, 320 F.3d at 1026 n.2 ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original) (citation omitted)). Moreover, it is not even clear from the Second Amended Answer and Counterclaim how Croghan could add up his allegations to get the 27.5 to 31.5 hours figure that he proposes in his opposition. Nor is it clear from the Second Amended Answer and Counterclaim that this allegation involves time that is distinct from the time Croghan alleges to have spent on the other specific tasks. Croghan may be double counting.

Finally, although Croghan alleges a series of unclear numbers and tasks, nowhere in his Second Amended Answer and Counterclaim does Croghan do what the Court requested of him in the February 22, 2019 Order, which was to allege "at least one workweek" in which Croghan

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS

worked in excess of forty hours and was not paid overtime wages.

Thus, because Croghan fails to allege that there was at least one workweek in which Croghan worked in excess of forty hours and was not paid overtime wages, *Landers*, 771 F.3d at 636, the Court GRANTS Snap's motion to dismiss Croghan's fourth counterclaim based on overtime and Croghan's fifth counterclaim.

The motion to dismiss these claims is with prejudice. The February 22, 2019 Order specifically identified the deficiencies in Croghan's fourth counterclaim based on overtime and Croghan's fifth counterclaim and warned Croghan that failure to cure the deficiencies would result in dismissal of these counterclaims with prejudice. February 22, 2019 Order at 25–26, 31–32. Specifically, Croghan was on notice that he needed to "allege facts demonstrating that there was at least one workweek in which Croghan worked in excess of forty hours and was not paid overtime wages." *Id.* at 25–26. Despite this warning, Croghan failed to file a Second Amended Answer and Counterclaim with amendments to cure the identified deficiencies. Therefore, the Court finds that further leave to amend would be futile. Furthermore, additional leave to amend would be unduly prejudicial to Snap as the instant motion to dismiss concerns Croghan's third attempt at an answer and counterclaims, and because Snap has already had to brief two motions to dismiss as well as a motion for leave to amend. Because further amendment would be futile and unduly prejudicial to Snap, Croghan's fourth counterclaim based on overtime and Croghan's fifth counterclaim are dismissed with prejudice. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 2. The Fourth Counterclaim Based on Unpaid Bi-Annual Training

As discussed, in the Second Amended Answer and Counterclaim, Croghan puts forth a new theory supporting his fourth counterclaim (Failure to Pay Minimum Wage) that does not rely on the fifth counterclaim (Failure to Pay Overtime). Specifically, in paragraph 20 of the Second Amended Answer and Counterclaim, Croghan alleges that Snap required Croghan to participate in bi-annual training, "which often lasted two (2) days from 8 a.m. to 8 p.m. or from 8 a.m. to 10 p.m.," and that Snap failed to pay Croghan for this training. SAA ¶ 20. This theory does not

require Croghan to allege that there was at least one work week in which Croghan worked in excess of forty hours because that requirement only applies to Croghan's theory that he was not paid overtime wages. *See Landers*, 771 F.3d at 646 (explaining that to allege a failure to pay overtime hourly wage, a plaintiff should be able to allege facts demonstrating that there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages). As discussed, the Court refers to Croghan's counterclaim based on this new theory as his "fourth counterclaim based on unpaid bi-annual training."

In the instant motion to dismiss the Second Amended Answer and Counterclaim, Snap concedes that Croghan's fourth counterclaim survives to the extent it is based solely on Croghan's allegation in paragraph 20 of the Second Amended Answer and Counterclaim, which concerns unpaid bi-annual training. Mot. at 18–19.

Because Snap concedes that the fourth counterclaim based on unpaid bi-annual training survives its motion to dismiss, the Court DENIES the motion to dismiss the fourth counterclaim based on unpaid bi-annual training.

### D. Counterclaims #8 and #9: Compensation Upon Termination and UCL

Croghan's eighth counterclaim, the Compensation Upon Termination counterclaim, alleges a violation of California Labor Code §§ 201–202, which requires unpaid wages to be paid upon termination. SAA ¶¶ 89–94. Croghan's ninth counterclaim (which was the tenth counterclaim in the First Amended Answer and Counterclaim) alleges a violation of the UCL. *Id.* ¶¶ 95–107.

In the February 22, 2019 Order, the Court dismissed Croghan's Compensation Upon Termination counterclaim because both parties agreed that the claim was derivative of Croghan's second, third, fourth, and fifth counterclaims, and the Court dismissed those counterclaims in the same order. February 22, 2019 Order at 26–27. Similarly, the Court dismissed Croghan's UCL counterclaim to the extent it was derivative of the other labor code claims that the Court dismissed in the February 22, 2019 Order. *Id.* at 30–31.

In the instant motion to dismiss the Second Amended Answer and Counterclaim, Snap

United States District Court
Northern District of California

argues that Croghan's Compensation Upon Termination counterclaim and Croghan's UCL counterclaim should be dismissed for being derivative of Croghan's first through fifth counterclaims. Mot. at 19. Croghan concedes that his Compensation Upon Termination counterclaim and his UCL counterclaim are derivative of his first through fifth counterclaims. Opp'n at 17. However, Croghan argues that his UCL counterclaim is also derivative of his sixth and seventh counterclaims regarding itemized wage statements and payroll records, which Snap did not move to dismiss. *Id.* In reply, Snap acknowledges that Croghan's UCL counterclaim is derivative of his other labor code claims and therefore requests that the Court dismiss Croghan's UCL counterclaim to the extent it is derivative of the counterclaims that the Court dismisses in the instant Order. Reply at 13 n.4.

Above, the Court dismissed with prejudice Croghan's second counterclaim, third counterclaim, fourth counterclaim based on overtime, and fifth counterclaim. Because Croghan admits that his Compensation Upon Termination counterclaim is derivative of those claims, the Court GRANTS with prejudice Snap's motion to dismiss Croghan's Compensation Upon Termination counterclaim (eighth counterclaim) to the extent it is derivative of Croghan's dismissed second counterclaim, third counterclaim, fourth counterclaim based on overtime,[2] and fifth counterclaim. *See Leadsinger, Inc.*, 512 F.3d at 532.

The Court DENIES Snap's motion to dismiss Croghan's Compensation Upon Termination counterclaim to the extent the Compensation Upon Termination counterclaim is derivative of (1) Croghan's first counterclaim, and (2) Croghan's fourth counterclaim based on unpaid bi-annual training.

Similarly, the Court GRANTS Snap's motion to dismiss Croghan's UCL counterclaim (ninth counterclaim) to the extent it is derivative of Croghan's second counterclaim, third counterclaim, fourth counterclaim based on overtime,[3] and fifth counterclaim. Further, because the

---

[2] As explained in Section III.C.2., Croghan's fourth counterclaim based on unpaid bi-annual training survives.

[3] As explained in Section III.C.2., Croghan's fourth counterclaim based on unpaid bi-annual

29

Court found in the instant Order that leave to amend those dismissed second through fifth counterclaims would be futile and unduly prejudicial to Snap, Croghan's UCL counterclaim—to the extent it is derivative of Croghan's dismissed second through fifth counterclaims—is also dismissed with prejudice. *See Leadsinger, Inc.*, 512 F.3d at 532.

The Court DENIES Snap's motion to dismiss Croghan's UCL counterclaim to the extent the UCL counterclaim is derivative of (1) Croghan's first counterclaim; (2) Croghan's fourth counterclaim based on unpaid bi-annual training; (3) Croghan's sixth counterclaim; and (4) Croghan's seventh counterclaim.

### E. Supplemental Jurisdiction

Snap also raises for the first time the argument that the Court should decline to exercise supplemental jurisdiction over Croghan's counterclaims. Mot. at 20–21. In opposition, Croghan argues that Snap's request for the Court to decline to exercise supplemental jurisdiction over Croghan's counterclaims is untimely because Snap did not raise this argument in the First Motion to Dismiss, and in any event, supplemental jurisdiction is appropriate. For the reasons given below, the Court DENIES Snap's motion to dismiss Croghan's counterclaims on this basis. The Court first discusses timeliness and second discusses supplemental jurisdiction.

As an initial matter, Federal Rule of Civil Procedure 12(g)(2) states, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(3), however, specifically provides that if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). Therefore, even though Snap failed to raise this argument in its First Motion to Dismiss, the Court has a continuing obligation to evaluate its subject matter jurisdiction.

Nonetheless, the Court finds that supplemental jurisdiction over Croghan's counterclaims

_____

training survives.

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS

is appropriate pursuant to 28 U.S.C. § 1367. 28 U.S.C. § 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Nonfederal claims are part of the same "case" as federal claims when they "derive from a common nucleus of operative [facts] and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Finley v. United States*, 490 U.S. 545, 549 (1989) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)), *superseded by statute on other grounds as stated in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). A district court has the discretion to decline supplemental jurisdiction under 28 U.S.C. §1367(a) if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The district court's discretion to decline supplemental jurisdiction is informed by the values of economy, convenience, fairness, and comity. *Gibbs*, 383 U.S. at 726.

Here, the Court agrees with Croghan that Snap's claims and Croghan's counterclaims involve the same parties. Further, Snap's claims arise out of Croghan's former relationship with Snap, and likewise, Croghan's counterclaims arise out of Croghan's former relationship with Snap. Thus, the claims "derive from a common nucleus of operative" facts. *Finley*, 490 U.S. at 549. Moreover, none of the four situations contemplated under 28 U.S.C. §1367(a) are present here. First, Croghan's counterclaims involve labor code violations and do not raise novel or complex issues of state law. Second, Croghan's counterclaims do not "substantially predominate" over Snap's federal trade secret claim. Third, the Court has not dismissed Snap's federal trade secret claim.

As to the fourth argument, Snap argues that judicial economy heavily favors declining

31

jurisdiction. Mot. at 21. The Court disagrees and finds that the values of economy, convenience and fairness are best advanced by the Court's continued retention of jurisdiction over Croghan's counterclaims at this stage in the litigation. In particular, this case has been pending a year, since Snap filed its complaint on August 3, 2018, and Croghan first asserted his counterclaims on August 28, 2018. ECF Nos. 1 and 15. Discovery is set to close on August 20, 2019. ECF No. 38. Moreover, dispositive motions are scheduled to be filed on October 31, 2019, and trial is set for March 16, 2020. *Id.* Further, this Court has already spent significant time and resources resolving Snap's First Motion to Dismiss, Croghan's motion for leave to amend, and the instant motion to dismiss, all of which concern Croghan's counterclaims. To decline to exercise supplemental jurisdiction over Croghan's counterclaims almost a year into this litigation and after three motions would not promote judicial economy, convenience to the parties, or fairness to Croghan. Thus, the Court DENIES Snap's request for the Court to decline supplemental jurisdiction over Croghan's remaining counterclaims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART with prejudice and DENIES IN PART Snap's Second Motion to Dismiss. Specifically, the Court rules as follows:

- The motion to dismiss the first counterclaim, the Unreimbursed Business Expenses counterclaim, is DENIED;
- The motion to dismiss the second counterclaim, the Missed Meal Period counterclaim, is GRANTED with prejudice;
- The motion to dismiss the third counterclaim, the Missed Rest Period counterclaim, is GRANTED with prejudice;
- The motion to dismiss the fourth counterclaim based on overtime is GRANTED with prejudice;
- The motion to dismiss the fourth counterclaim based on unpaid bi-annual training is DENIED;

32

- The motion to dismiss the fifth counterclaim, the Failure to Pay Overtime counterclaim, is GRANTED with prejudice;

- The motion to dismiss the eighth counterclaim, the Compensation Upon Termination counterclaim, to the extent it is derivative of (1) the second counterclaim; (2) the third counterclaim; (3) the fourth counterclaim based on overtime; and (4) the fifth counterclaim is GRANTED with prejudice;

- The motion to dismiss the eighth counterclaim, the Compensation Upon Termination counterclaim, to the extent it is derivative of (1) the first counterclaim; and (2) the fourth counterclaim based on unpaid bi-annual training is DENIED;

- The motion to dismiss the ninth counterclaim, the UCL counterclaim, to the extent it is derivative of (1) the second counterclaim; (2) the third counterclaim; (3) the fourth counterclaim based on overtime; and (4) the fifth counterclaim is GRANTED with prejudice;

- The motion to dismiss the ninth counterclaim, the UCL counterclaim, to the extent it is derivative of (1) the first counterclaim; (2) the fourth counterclaim based on unpaid bi-annual training; (3) the sixth counterclaim; and (4) the seventh counterclaim is DENIED.

- The motion to dismiss to the extent the motion requests the Court to decline supplemental jurisdiction over Croghan's remaining counterclaims is DENIED.

Thus, the following claims remain in the case:

- Croghan's first counterclaim, the Unreimbursed Business Expenses counterclaim;

- Croghan's fourth counterclaim, the Failure to Pay Minimum Wage counterclaim, based solely on unpaid bi-annual training;

- Croghan's sixth counterclaim, the Employee Itemized Wage Statement counterclaim;

- Croghan's seventh counterclaim, the Payroll Records counterclaim;

United States District Court
Northern District of California

- Croghan's eighth counterclaim, the Compensation Upon Termination counterclaim, to the extent it is derivative of (1) the first counterclaim; and (2) the fourth counterclaim based on unpaid bi-annual training;

- Croghan's ninth counterclaim, the UCL counterclaim, to the extent it is derivative of (1) the first counterclaim; (2) the fourth counterclaim based on unpaid bi-annual training; (3) the sixth counterclaim; and (4) the seventh counterclaim.

**IT IS SO ORDERED.**

Dated: August 1, 2019

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 18-CV-04686-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART SECOND MOTION TO DISMISS
COUNTERCLAIMS